Veronica Dawn **QUALLEY** and Sonny Dale Moore, Appellants,

v.

The **STATE** of Texas.

Nos. PD–1976–04, PD–1971–04.

Court of Criminal Appeals of Texas.

May 24, 2006.

---

**24.** *Id.* (*citing Caldwell v. State,* 818 S.W.2d 790, 796 (Tex.Crim.App.1991)).

M. Michele Greene, Odessa, for appellants.

Frank D. Brown, District Attorney, Fort Stockton, Matthew Paul, State's Attorney, Austin, for state.

PER CURIAM.

These cases raise questions about how to evaluate the "prejudice" requirement for granting a severance of defendants. Because we conclude that the existence of "antagonistic defenses" does not by itself demonstrate prejudice, we reverse the judgment of the Court of Appeals.

## I.  BACKGROUND

### A.  Events Giving Rise to the Prosecution

Whisper Cheyann Lynd, the victim, was the two-year-old daughter of appellant Qualley.  Appellant Moore was Qualley's live-in boyfriend.  The three of them lived together in Moore's home.  At 10:11 p.m. on January 3, 2002, Moore called 911 and advised the dispatcher that his child had fallen out of bed and was not responding. An ambulance was sent, but the emergency medical technician could not revive the child.  Whisper was taken to the hospital, but she was dead on arrival.  Examination by hospital personnel and a later autopsy revealed that the child's body was riddled with injuries.  There were forty-four bruises on the body, found variously on the

forehead, around the eyes, behind the ears, on the jaw, on the back of the knees, on the soles of the feet, and on the child's arms, chest, and back. Some of these bruises were old while others were recent. Inspection of the inside of the child's skull revealed a subdural hemorrhage, which was determined to be the fatal injury. One hundred and twenty milliliters of blood were found in the abdominal cavity while twenty-five milliliters were found in the brain. Combined, this amounted to one-fourth of the blood in the child's body. The pathologist testified that it was one of the worst cases of child abuse that he had ever seen.

Pecos County Deputy Sheriff Tulon Murphy interviewed Moore. At first, Moore denied responsibility, but later in the interview, he confessed to causing Whisper's death. Moore claimed that he did not mean to kill the child but lost his temper, that "this happens to me all the time for no reason at all," and that he needed professional help. He also stated that Qualley had nothing to do with her daughter's death.

### B. Pre–Trial

Moore and Qualley were jointly charged in a three-count indictment in connection with Whisper's death. Count I charged Moore and Qualley with capital murder by "intentionally and knowingly caus[ing] the death of an individual under six years of age ... by causing blunt force trauma to the head of Whisper Cheyann Lynd." Count II charged Qualley with capital murder by omission: having a legal duty as a parent to protect the child, and failing to protect her from Moore. Count III charged Qualley with serious bodily injury to a child by omission by failing to protect her from Moore.

Well in advance of trial, both defendants moved for severance. Moore contended that Qualley had a prior admissible conviction, the introduction of which would be prejudicial to Moore at trial. Paradoxically, Moore also claimed that if the conviction were ruled inadmissible, "it should be considered exculpatory and mitigating" to Moore. Moore further claimed that Qualley had made statements incriminating him, and if she chose not to testify, admitting those statements would deprive Moore of his constitutional right to confrontation. Finally, Moore contended that a joint trial would be prejudicial because Moore and Qualley have antagonistic defenses. In support of his claim that the defenses were antagonistic, Moore's motion stated: "[Qualley's] position is that she does not know what happened and did not see the events that led up to the death of her child. Defendant Sonny Dale Moore will testify that he did not kill or injure the child, and that the only other person that was present was the Co–Defendant." Moore claimed that this state of affairs made the defenses " 'mutually exclusive' in the sense that a jury, in order to believe the core of one defense, must necessarily disbelieve the other."

In support of her request for severance, Qualley contended: "Your Defendant ... does not know at this point but ... has reason to believe and does believe that her interest and the interest of Sonny Dale Moore are conflicting. Your Defendant has reason to believe and does believe that Sonny Dale Moore may change his statement and try to involve the instant Defendant in the death of the minor child."

Before trial, the State abandoned Count I as to Qualley. It also appears that the trial court denied the motions for severance sometime before trial.[1]

---

**1.** The record contains no transcription of this     event, but during trial the trial court referred

## C.  Trial

The *appellants were adverse to each* other at several points during the trial.  In opening statement and closing argument, Qualley's counsel accused Moore of brutally killing the child, while, in closing argument, Moore's counsel accused Qualley of being the adult in charge whenever Whisper was injured.  And, presenting a very different story from his earlier confession, Moore testified adversely to Qualley on direct examination:

Q.  Now, Sonny, did you kill the child Whisper?

A.  No, sir, I didn't.

Q.  Do you know who killed the child?

A.  There was just me and her in the house and . . .

Q.  Okay, and when you say, "just me and her in the house"—

A.  Me and Veronica.

Q.  Did you see Veronica kill the child?

A.  No, sir, I didn't.

Q.  But you know that you didn't do it?

A.  Yes, sir.  I did not do it.

At this point, Moore's attorney stated that those were all the questions he wanted to ask until severance was granted and re-urged his motion for severance.  Qualley's attorney adopted the re-urged motion. The trial court remarked that examination of the witness was not complete and made no ruling.

In cross-examination, Qualley's attorney responded by confronting Moore with the fact that the child's death was not an accident and asking Moore to explain who was responsible:

Q.  You're telling the Ladies and Gentlemen of this jury that you did not kill the little girl; is that correct?

A.  That's correct.

Q.  You've seen, you've heard the pathologist testify that that child did not die by accident, that child was killed by someone?

A.  Yes, sir.  I know that now.

Q.  And if you didn't kill that child that evening who are you telling the jury killed that child?

A.  It's pretty obvious.

Q.  Say who killed the child?  Say the name of the person you claim killed the child that night?

A.  There was only one other person in the house [sic] that was Veronica Dawn Qualley.

Qualley's attorney also objected several times to testimony that Moore's attorney attempted to elicit.  The only testimony of significance, however, appears to relate to Qualley's prior conviction.  The admissibility of the conviction was litigated at several points during the trial.

First, Moore attempted to question the pathologist who conducted the autopsy about a medical report of an injury to another child of Qualley that had resulted in Qualley's conviction.  The prosecutor and Qualley's attorney both objected that the line of questioning related to an extraneous offense and was irrelevant to the offense at trial.  The trial court replied that the evidence "was probably irrelevant unless you have some reason to come under 404(b) to show motive or something of that nature."  Moore's attorney contended that he was not governed by Rule 404(b) because that rule did not require him to give notice.  In the alternative, he argued that the evidence was admissible to show identity.  Qualley's attorney observed that admitting evidence of the extraneous offense would require the court to sever the case.  The trial court agreed, but said that such event had not occurred, and held "[a]t

to the fact that the severance motions had

already been addressed.

this time" that the evidence was "inadmissible as being extraneous and not relevant."

Second, Moore's attorney attempted raised the issue shortly after Qualley's attorney began cross-examining Moore. When Qualley's attorney asked Moore if he had experiences, both good and bad, with police officers, Moore's attorney objected, and a hearing was held outside the presence of the jury. Moore's attorney renewed the motion for severance, and Qualley's attorney joined the motion. Moore's attorney also complained that he was being prohibited from introducing Qualley's prior conviction in support of Moore's defense. The prosecutor responded that the prior conviction was inadmissible under Rules of Evidence 402, 403, an 404(b) and would be inadmissible even if the State had prosecuted Qualley in a separate trial. Moore's counsel replied that the extraneous offense was of the same type as the offense charged and would be admissible to show identity. The trial court explained that its previous denial of Moore's request to introduce the prior conviction would stand. The trial court also denied the motions for severance.

Third, Moore's attorney attempted to introduce the prior conviction on Moore's redirect examination. On redirect, Moore's counsel elicited testimony that Moore took the blame for the killing so that Qualley would not be arrested that night. Outside the presence of the jury, Moore's counsel requested that he be allowed to introduce Qualley's prior conviction through Moore's testimony. Moore's counsel explained that Moore knew about the conviction and his knowledge of that conviction was one reason he took the blame to protect her. The trial court again denied the request to introduce the evidence.

On a bill of exception, Moore's attorney elicited details regarding Qualley's prior conviction. Qualley was charged with causing serious bodily injury to another child of hers, three-month-old Ariel Nickole Lynd, by jerking the child up and causing a spiral fracture to the right arm. The investigation of the incident revealed only one other possible injury to this child—a healing fracture to the right femur—but that injury was disputed by an orthopedic surgeon, a radiologist, and a pediatrician, and Qualley was not charged in connection with that. Qualley pled guilty to second-degree injury to a child, and received and successfully completed probation.

During the hearing on the bill of exceptions, Moore renewed his request to introduce the evidence and his request for a severance. Both requests were denied. The trial court ruled that the evidence lacked relevance to the charges in the indictment.

Qualley did not testify, and her attorney presented no witnesses.

Moore and Qualley were both convicted of capital murder, and Qualley was convicted of injury to a child. Because the State did not seek the death penalty, the trial judge sentenced Moore and Qualley to life imprisonment on the capital-murder convictions. In addition, the trial judge sentenced Qualley to forty years' imprisonment on the injury-to-a-child conviction.

## D. Appeal

Moore and Qualley appealed, and both presented, among other complaints, a point of error regarding the trial court's denial of the motion for severance. Moore contended that severance was warranted because the defendants became adverse to each other at several points: (1) during the testimony of Sheriff Harris regarding whether the bathwater was warm, (2) with

regard to the admission of x-rays through the testimony of Physician's Assistant Wilde, and (3) on whether to admit evidence of Qualley's prior conviction. He specifically contended that the prior conviction was admissible because the injuries were similar to Whisper's injuries and because Moore's knowledge of the prior conviction was relevant to his motive to falsely confess. Moore also contended that a joint trial prejudiced him because the defendants had "antagonistic, or mutually exclusive, defenses." He contended that the antagonism of defenses was established by his own testimony elicited by Qualley's counsel during cross-examination. Moore also claimed that Qualley's prior conviction made severance mandatory under the "prior admissible conviction" portion of the severance statute.

In her appeal, Qualley contended that Moore moved into an adverse position comparable to that of a prosecutor when, during his testimony, he implicated Qualley as the perpetrator. Qualley further contended that "for the jury to believe Moore did not kill Whisper, it would necessarily have to disbelieve [Qualley's] contention that she was not guilty of her daughter's murder." She concluded that this state of affairs prejudiced her and required a severance.

In its discussion of the law of severance, the Court of Appeals concluded that severance is required only on a showing of "clear prejudice"[2] and clear prejudice is shown only if "the respective defenses of the parties are mutually exclusive to the extent that the jury must believe the core of one defense and must necessarily disbelieve the core of the other."[3] With regard to Moore, the Court of Appeals first held that the failure to grant a severance due to Qualley's prior conviction was harmless because her conviction was not introduced into evidence.[4] However, with regard to both Moore and Qualley, the court found that the appellants' defenses were "mutually antagonistic": "If the jury were to believe [Moore's] assertions at trial, then [Qualley] committed the offense. This would be antagonistic to her defense that she did not commit the offense and did not fail to protect her child from [Moore]."[5] As a result, the appellate court concluded that the trial court erred in denying the appellants' motions for severance, and it reversed the trial court's judgments in both cases and remanded the cases for new trials.[6]

### E. The State's Petitions

The State petitioned for discretionary review in both cases. Ground one of each case alleges: "The Court of Appeals decided an important question of state law in conflict with decisions of other Courts of Appeals regarding the application of the 'mutually exclusive defense' test for severance of defendants." In connection with this ground, the State argues that the Court of Appeals mischaracterized the test

2. *Qualley v. State*, 151 S.W.3d 655, 658 (Tex. App.-El Paso 2004); *Moore v. State*, No. 08–03–00115–CR, slip op. at 5, 2004 WL 2406570 (Tex.App.-El Paso, October 21, 2004)(not designated for publication).

3. *Qualley*, 151 S.W.3d at 659; *Moore*, slip op. at 5.

4. *Qualley*, 151 S.W.3d at 659; *Moore*, slip op. at 6.

5. *Qualley*, 151 S.W.3d at 659; *Moore*, slip op. at 6. In Moore's case, but not Qualley's, the Court of Appeals observed that "Qualley's counsel joined the State with regard to objecting to testimony that [Moore] was trying to elicit." *Moore*, slip op. at 4–5. The appellate court's opinion does not attach any specific significance to this fact. *See id., passim.*

6. *Qualley*, 151 S.W.3d at 659, 660; *Moore*, slip op. at 6.

as whether the defenses were "mutually antagonistic" instead of using the correct formulation of "mutually exclusive." The State further argues that the defenses were not mutually exclusive because of the way in which the appellants were charged. Because the charge against Qualley was capital murder by *omission,* Moore's testimony that Qualley actually killed the child would, if believed, require Qualley's acquittal. Consequently, the State reasons, the appellants' defenses did not negate each other.

In ground two of each case, the State alleges, for different reasons, that the Court of Appeals erred in its harmless-error analysis.[7]

## II. ANALYSIS

### A. The Severance Statute

Article 36.09 of the Texas Code of Criminal Procedure provides:

Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defen-

dant whose joint trial would prejudice the other defendant or defendants.

The above language imposes two basic requirements for showing entitlement to a severance: (1) that the motion for severance be timely, and (2) that at least one of two possible grounds for severance be alleged, with supporting evidence.[8] The two grounds for severance are: (1) the co-defendant has a previous admissible conviction, and (2) a joint trial would prejudice the (moving) defendant. Timeliness and "previous admissible conviction" issues are relevant to a small part of our discussion and will be addressed at that point. At this time, we turn to the main issue of contention, the "prejudice" ground for severance.

### B. Prejudice as a Ground for Severance

#### 1. *Legislative History and Texas Caselaw*

Under *Boykin v. State,* we analyze the severance statute in light of the plain meaning of its language, unless that language is ambiguous or leads to absurd results that the Legislature could not possibly have intended.[9] Here, "prejudicial" is undefined and somewhat ambiguous. The interpretive commentary says that Article 36.09 was meant to rectify the situation in which "two or more men commit the same crime together, and yet, because of the severance law which allowed an accused to sever as a matter of right, one defendant gets life imprisonment while another gets a suspended sentence."[10] That comment suggests that the Legislature in-

---

7. Due to our disposition of the cases on ground one, we dismiss ground two of the State's petitions.

8. *See also Mulder v. State,* 707 S.W.2d 908, 915 (Tex.Crim.App.1986)(mere allegations insufficient to show entitlement to a severance).

9. 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

10. Hon. W.A. Morrison, Interpretive Commentary, Tex.Code Crim. Proc., Art. 36.09, p. 302 (Vernon's 1981).

tended for defendants accused of the same offense to be tried together most of the time. "Prejudice," then, cannot mean the types of circumstances or disagreements between parties that would normally be expected to pop up during any trial containing multiple defendants. In a "special commentary" to the statute, former Presiding Judge Onion acknowledged that "[i]t may be difficult for the trial Judge to determine just when a joint trial would be prejudicial as that term is not here defined."[11] Presiding Judge Onion suggested that prejudice may occur "if one of the defendants has given a confession implicating the second one, or where their defenses are antagonistic or inconsistent," or where there is a "prejudicial comment by one defense counsel in a joint trial about the other defendant, such as his failure to take the stand."[12]

This Court has commented only once on the standard for showing prejudice due to antagonism between co-defendants. In Goode v. State, we said that to establish prejudice on the basis of antagonism between the defendants:

> the defendants' positions must be 'mutually exclusive' in the sense that 'the jury in order to believe the core of one defense, must necessarily disbelieve the core of the other.'[13]

This statement was arguably dicta because a severance was ultimately granted in the trial below, the issue was whether the defendant was deprived of peremptory challenges as a result, and this Court held that the co-defendants were not "tried together" for the purpose of allocating peremptory challenges.[14] The statement could also arguably be characterized as part of the holding, or an alternate holding, since we mentioned the antagonism later in the opinion as support for the proposition that the defendant was deprived of her strikes.[15] In support of this antagonism standard, we cited United States v. Lee,[16] a Fifth Circuit case, and De Grate v. State,[17] a previous case from this Court. A reading of those opinions reveals that the articulated standard comes from Lee[18] and not from De Grate.[19]

## 2. Federal Cases

Lee involved the application of Federal Rule of Criminal Procedure 14, which permitted the trial court to order a severance if it appeared that a defendant would be prejudiced by a joint trial.[20] The Lee court articulated the standard as follows:

> When co-defendants raise conflicting defenses, this test is met and severance is required when the defenses are "antagonistic to the point of being irreconcilable and mutually exclusive." The standard for mutual exclusivity is that: "the essence or core of the defenses must be in conflict such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." Defendants may disagree on the facts not comprising the core of their

---

11.  Hon. John F. Onion, Special Commentary, Tex Code Crim. Proc., Art. 36.09, p. 303 (Vernon's 1981).

12.  Id.

13.  740 S.W.2d 453, 455 (Tex.Crim.App.1987).

14.  Id. at 455–459.

15.  Id. at 460–461.

16.  744 F.2d 1124, 1126, rehearing denied en banc, 747 F.2d 1465 (5th Cir.1984).

17.  518 S.W.2d 821 (Tex.Crim.App.1975).

18.  744 F.2d at 1126.

19.  See De Grate, passim.

20.  744 F.2d at 1126.

defenses without generating the kind of prejudice that mandates severance.[21]

*Lee* cited the Fifth Circuit's prior case of *United States v. Romanello*[22] for this articulation of the standard. According to *Lee*, the "underlying purposes of the rule" included guarding against the defendant having to face a "second prosecutor" and "the government's best witness" in the form of his co-defendant.[23] It is important to observe that *Lee* did not hold that meeting the articulated standard was the *only* way prejudice could be shown. To the contrary, after finding that antagonism had not been established, the Fifth Circuit, engaging in a balancing analysis, went on to "determine whether [the defendant] yet suffered compelling prejudice as a result of the failure to sever."[24]

The seminal Fifth Circuit case giving rise to the antagonism standard cited in *Lee* is *United States v. Berkowitz*,[25] which is cited by both *Lee*[26] and *Romanello*.[27] *Berkowitz* held that "the defense of a defendant reaches a level of antagonism (with respect to the defense of a co-defendant) that compels severance of that defendant, if the jury, in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."[28] The court concluded that such a circumstance would establish prejudice because where co-defendants "present defenses that are antagonistic at their core, a substantial possibility exists that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."[29] The court held that the compelling prejudice necessary to justify a severance does not arise, however, "where the conflict concerns only minor or peripheral matters which are not at the core of [the defendant's] defense."[30] Applying its standard, the court found that the essence or core of each defense in the case before it was "noninvolvement in the criminal activity" and that these defenses were not in conflict.[31] Finding that sufficient antagonism had not been demonstrated, the Fifth Circuit noted that the trial court engaged in measures to guard against prejudice, which included "excluding testimony of questionable relevance to the defense of one defendant that was prejudicial to another defendant."[32]

In *Romanello*, the Fifth Circuit made clear that the defendants did not have to accuse each other of wrongdoing to have sufficiently antagonistic defenses.[33] "Severance may be required if only one defendant accuses the other, and the other denies any involvement."[34] At issue was the disappearance from customs of suitcases containing gold chains.[35] The Government's theory was that Romanello and Mendez were smuggling the gold into the United States, and Vertucci, an airline em-

---

21. *Id.* (internal citations omitted).

22. 726 F.2d 173 (5th Cir.1984).

23. 744 F.2d at 1126.

24. *Id.* at 1126–1127.

25. 662 F.2d 1127 (5th Cir.1981).

26. 744 F.2d at 1126.

27. 726 F.2d at 177.

28. 662 F.2d at 1134.

29. *Id.*

30. *Id.*

31. *Id.*

32. *Id.* at 1135.

33. 726 F.2d at 177.

34. *Id.*

35. *Id.* at 174.

ployee, was the "inside man" who would get the gold past customs.[36] As part of the conspiracy, Vertucci was handcuffed to a pole in order to make it look like the disappearance of the gold was the result of a robbery.[37] Vertucci's defense was that he was actually robbed; Romanello and Mendez claimed that they had innocently accepted a job to drive the gold to New York.[38]

The court also made clear that the antagonism of defenses did not have to be raised by a defendant's own testimony, but could be raised through argument of counsel.[39] Although Vertucci never identified Romanello and Mendez as the robbers, his attorney did so in his opening statement to the jury.[40] The Fifth Circuit specifically rejected the idea that a severance motion for antagonistic defenses would fail simply because the "co-defendant refused to testify."[41]

The Fifth Circuit also found prejudice to Romanello and Mendez to be straightforward because they faced Vertucci's counsel as a second prosecutor.[42] In addition, the court noted that "Vertucci's defense depicted Romanello and Mendez as violent thugs who threatened to kill him if he testified."[43] Prejudice to Vertucci, however, was not straightforward because his co-defendants did not base their defenses on a direct accusation against him.[44] Nevertheless, the Fifth Circuit found prejudice,

and in doing so, articulated a five-prong test applicable to this type of defendant.[45] According to the *Romanello* court, when the core of a *co-defendant's* defense is not the defendant's own guilt, the defendant is nevertheless entitled to a severance if: (1) the core of the *defendant's* defense is the guilt of the co-defendant, (2) disproving the defendant's defense would establish the defendant's own guilt, (3) the defendant's defense and the defense of the co-defendant are irreconcilable and mutually exclusive, (4) the co-defendant actively attacks the defendant's defense at trial, and (5) the defendant suffers compelling prejudice as a result.[46]

In *Hood v. Helling,* the Eighth Circuit addressed the unusual situation in which the defenses were inconsistent but were not inculpatory as to either defendant.[47] Each defendant's defense was that the other person had fired the fatal shot but was justified in doing so.[48] Although the case was a federal habeas action in which the defendants argued that the United States Constitution required a severance, the Eighth Circuit applied the same "antagonistic defenses" standard employed in connection with Rule 14.[49] The court concluded that the defenses were not antagonistic because "[h]ad the jury accepted either defendant's theory of justification, it could have acquitted both of first degree murder

36. *Id.* at 176.

37. *Id.*

38. *Id.* at 177.

39. *Id.* at 178–179.

40. *Id.* at 178.

41. *Id.* at 179.

42. *Id.*

43. *Id.* at 180.

44. *Id.*

45. *Id.* at 180–181.

46. *Id.*

47. 141 F.3d 892 (8th Cir.), *cert. denied,* 525 U.S. 1004, 119 S.Ct. 516, 142 L.Ed.2d 428 (1998)

48. *Id.* at 895.

49. *Id.*

under Iowa law."[50]

Although *Hood* did not rely upon *Romanello*, its treatment of the defenses is consistent with the test *Romanello* applied to defendant Vertucci. Because neither *Hood* defendant was inculpated by the other, *Romanello* would require application of the five-point test to each of them. Both defendants would then fail the test at step one because neither defendant inculpated the other. That is, each defendant was in a position where he was neither inculpated by the co-defendant nor did he inculpate the co-defendant. Even if the defendants could get past step one, however, they would fail at step two: disproving the defendant's defense would not establish the defendant's own guilt because the co-defendant's defense would also exculpate the defendant. While not specifically addressing these types of scenarios, several other circuits have suggested, consistent with these holdings, that a defendant advancing an antagonistic-defenses claim is required to show not only that the defenses are mutually exclusive but also that one defendant's defense would require the jury to convict the other defendant.[51] Some of those circuits have further suggested that "mere fingerpointing among co-defendants—i.e. the familiar 'he did it, not I' defense—normally is not a sufficient ground for a severance."[52]

In citing a Fifth Circuit case, this Court in *Goode* perhaps recognized that the availability of federal precedent on the severance issue provided a useful framework for addressing these types of claims.[53] There is indeed a great deal of caselaw in the federal system regarding the issue of severance on the ground of prejudice, and indeed, on the sub-issue of prejudice established by antagonism between the defendants.[54] One important intervening event since this Court decided *Goode* that significantly changes the legal landscape, however, was the Supreme Court's decision in *Zafiro v. United States.*[55]

As with the federal cases already discussed, *Zafiro* construed Federal Rule 14, which provided "If it appears that a defendant or the government is prejudiced by a joinder of ... defendants ... for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."[56] The Court repudiated the notion that antagonistic or

---

50. *Id.* at 897.

51. *United States v. Pena–Lora*, 225 F.3d 17, 33 (1st Cir.2000); *United States v. Cardascia*, 951 F.2d 474, 484 (2nd Cir.1991); *United States v. Sherlock*, 962 F.2d 1349, 1362 (9th Cir.), *cert. denied*, 506 U.S. 958, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). *But see Smith v. Kelso*, 863 F.2d 1564, 1571 (11th Cir.), *cert. denied*, 490 U.S. 1072, 109 S.Ct. 2079, 104 L.Ed.2d 644 (1989)(allowing severance where jury could not reasonably accommodate both defenses).

52. *Pena–Lora*, 225 F.3d at 33. *See also United States v. Villegas*, 899 F.2d 1324, 1346 (2nd Cir.1990), *cert. denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990).

53. The Texas statute does lack one feature of Federal Rule 14—the "other relief" provision, but that difference is formalistic rather than substantive. Where measures short of severance can cure prejudice arising from a joint trial, a defendant cannot rationally complain that the joint trial would prejudice him, and so the Texas statute allows the trial court to fashion lesser remedies as well.

54. We have cited some cases but many more are easily found. We will not further lengthen this opinion by citing to them here.

55. 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

56. *Zafiro*, 506 U.S. at 538, 113 S.Ct. 933 (quoting FED. R.CRIM. PROC. 14; ellipses in *Zafiro* ).

irreconcilable defenses could be considered presumptively or inherently prejudicial:

> In interpreting Rule 14, the Courts of Appeals frequently have expressed the view that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate a severance [citing several cases including *Berkowitz*]. Notwithstanding such assertions, the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses [citing several cases including *Romanello*]. The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses. Nevertheless, petitioners urge us to adopt a bright-line rule, mandating severance whenever co-defendants have conflicting defenses. We decline to do so. Mutually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion.[57]

The Court held that a severance should be granted only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[58] The Court gave some examples of when such a risk might occur, such as admitting evidence against a co-defendant that is inadmissible and prejudicial as to the defendant or excluding evidence that is exculpatory to the defendant because it is inadmissible with regard to the co-defendant, but the Court ultimately cautioned that these examples were not exclusive and the risk of prejudice would vary with the facts in each case.[59]

### 3. The Correct Standard for Prejudice

▇▇▇ From this discussion, we conclude that we should abandon our prior suggestion in *Goode* that the existence of antagonistic defenses could by itself be sufficient to warrant a severance. While Presiding Judge Onion's special commentary suggested that severance might be granted for antagonistic defenses, we have no evidence that the Legislature specifically contemplated antagonistic defenses as a ground for severance. Our prior reliance on federal caselaw involving a similarly-worded counterpart to our severance statute is understandable, but we think that reliance now supports following *Zafiro* rather than the prior cases available to us at the time. Being the definitive (and first) pronouncement on the matter by the Supreme Court, *Zafiro* is especially persuasive. Moreover, prior to *Zafiro*, federal caselaw regarding severance for antagonistic defenses was complex and confusing. And we agree with the Supreme Court that, as a matter of practical reality, mutually exclusive defenses are not necessarily prejudicial. We see nothing in *Zafiro* that conflicts with the language of our own statutory provision. Accordingly, we adopt *Zafiro*'s construction as our own. To establish prejudice, the defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction.

---

**57.** *Id.* at 538–539, 113 S.Ct. 933 (citations omitted).

**58.** *Id.* at 539, 113 S.Ct. 933.

**59.** *Id.*

■ In connection with this holding, we observe that prejudice must be analyzed with regard to each defendant. Prejudice may be shown for one defendant but not another. This fact becomes clearer in a case involving more than two defendants, in which some defendants can be severed while others cannot. Even in a two-defendant case, however, the principle applies for purposes of reviewing the case on appeal. One defendant may be entitled to a severance while the other is not. While a severance at trial in that situation would in essence grant both defendants a separate trial, only the defendant entitled to the severance can obtain relief on appeal.[60]

### 4. The Present Case

Because we now hold that antagonistic defenses are not prejudicial *per se*, we reject the conclusion that any such antagonism of defenses required a severance. Qualley's request for severance was based entirely upon antagonistic defenses, and so her claim fails, but Moore advanced another basis for severance that requires our consideration. Moore contended at trial and on appeal that severance was required because of Qualley's prior conviction. During the course of proceedings, three different rationales for this conclusion were advanced: (1) the prior conviction qualified as a "previous admissible conviction" mandating a severance under the statute, (2) the prior conviction was admissible to demonstrate Qualley's identity as

the perpetrator of the present offense and its exclusion at the joint trial thus prejudiced his defense, and (3) the prior conviction was admissible to show Moore's motive to confess falsely and its exclusion at the joint trial thus prejudiced his defense.

■ The "previous admissible conviction" portion of the statute acts only to shield a defendant from the introduction of the co-defendant's conviction. The idea is that a defendant without a conviction may suffer "guilt by association" from the jury's exposure to the co-defendant's previous crime. It is for this reason that severance on this basis is mandatory only when the moving defendant himself has no prior conviction that would be admissible at either the guilt or punishment stage of trial.[61] And it is also the reason why, even when the requisite circumstances are present, failure to grant a severance on this basis is harmless if the co-defendant's previous conviction was not in fact admitted at trial.[62] To the extent the Court of Appeals addressed Moore's first rationale for a severance based on the prior conviction, it correctly concluded that any error was harmless because Qualley's conviction was not admitted.

But the second and third rationales for a severance based on the prior conviction are not susceptible to this harmless-error holding because they involve the *opposite* of a claim made under the "previous admissible conviction" clause of the statute. The contention is that the prior conviction

**60.** We also note that statutory language clearly indicates that the defendant *producing* the prejudice is the one who is severed, but the defendant *suffering* the prejudice is the one that has the right to have the prejudice-producing defendant severed. How this works is easier to visualize in a setting involving more than two defendants. For example, if there are three defendants and the presence of one of the defendants causes prejudice to the other two, the other two defendants have a right

to have the prejudice-producing defendant severed from the case.

**61.** *Sanne v. State,* 609 S.W.2d 762, 775 (Tex. Crim.App.1980), *cert. denied sub. nom., Skillern v. Texas,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981).

**62.** *See Rivello v. State,* 476 S.W.2d 299, 300 (Tex.Crim.App.1971).

was exculpatory evidence that was erroneously excluded as a result of the joint trial. Such a contention is simply a claim made under the "prejudice" clause of the statute. The Court of Appeals's holding does not address those two issues, but we address them now.

■ Moore's claim that Qualley's prior conviction was admissible to show identity is without merit. While there were some similarities between the offense for which Qualley was previously convicted and the present offense, there were also striking differences. To show identity under Rule 404(b),[63] the prior bad act "must be so distinctively similar" to the present offense "as to constitute a 'signature' act."[64] The trial court was well within its discretion to believe the offenses were not similar enough to warrant admission. And that conclusion did not depend on whether the appellants were tried jointly or separately.

Admissibility of the evidence under the motive claim, however, does appear to vary with whether the appellants were tried together. Moore's knowledge of Qualley's prior conviction was relevant to whether he had a motive to confess falsely, but it was also highly prejudicial to Qualley's defense and was not otherwise admissible against Qualley.

■ However, this claim was not timely presented. To be timely, a motion for severance must be made before trial if the factual basis for seeking a severance was known prior to trial.[65] Otherwise, the motion must be made "at the first opportunity or as soon as the grounds for [severance] become apparent or should have become apparent."[66] Implicit in the requirement that the motion be timely is a requirement that the underlying grounds be alleged in a timely fashion as well.[67] A new ground is in essence a new motion, and its timeliness should be viewed accordingly.

Moore clearly knew about his own motives before trial and, therefore, was obligated to raise before trial any claim based upon those motives. Although his written pre-trial motion for severance did depict the extraneous offense as "exculpatory," the motion did not explain how it was exculpatory. The trial court could not have been expected to anticipate that the extraneous offense would be exculpatory in this particular manner, especially since this exculpatory explanation required at least two additional facts that were known to Moore but not revealed until the middle of trial: (1) that Moore knew about Qualley's prior conviction, and (2) that his knowledge of the prior conviction was part of his motive for falsely confessing. Consequently, the trial court did not err in failing to grant a severance for this belated reason.

---

**63.** Tex.R. Evid. 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

**64.** *Johnston v. State,* 145 S.W.3d 215, 221 n. 16 (Tex.Crim.App.2004).

**65.** *Aguilar v. State,* 26 S.W.3d 901, 904–905 (Tex.Crim.App.2000).

**66.** *Id.* at 910.

**67.** *See United States v. Long,* 894 F.2d 101, 105 (5th Cir.1990)(criticizing the defendant for failing to raise argument in original severance motion).

## III. DISPOSITION

The judgment of the Court of Appeals in Moore's case is reversed and the case is remanded to that Court to address Moore's remaining points of error. The judgment of the Court of Appeals in Qualley's case is reversed, and the trial court's judgment is affirmed.[68]

HERVEY, J. filed a concurring opinion in which KEASLER, J., joined.

JOHNSON, J. concurred.

HERVEY, J., concurring in which KEASLER, J., joined.

I agree with the Court that any error in denying appellant Moore a severance under the "previous admissible conviction" portion of Article 36.09, TEX.CODE CRIM. PROC., was harmless because appellant Qualley's previous conviction was not admitted. *See Qualley/Moore v. State,* 206 S.W.3d 624, 637–38 (Tex.Cr.App. Nos. PD–1971–04 and PD–1976–04, delivered this date). Moore also claimed that the trial court's failure to grant him a severance prejudiced him by preventing him from using Qualley's prior conviction to show Qualley's identity as the one who killed the victim and to explain why Moore would falsely confess to the police. The Court decides that Moore procedurally defaulted the latter claim and that the former claim is without merit because Qualley's prior conviction was not admissible to show Qualley's identity. *See Qualley/Moore,* 206 S.W.3d at 629–30, 630–31, 637–38. I would decide that Moore procedurally defaulted both of these claims by not asserting them until the middle of trial. *See id.* I otherwise join the Court's opinion.

68. There are no unresolved points of error in Qualley's case.