Opinion filed August 9,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00355-CR

                                                    __________

 

                                 JACKIE
LYNN SMITH, Appellant  

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 29th District Court

 

                                                         Palo
Pinto County, Texas

 

                                                    Trial
Court Cause No. 14276B

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Jackie Lynn Smith of engaging in organized criminal activity.  The
trial court assessed his punishment at confinement in the Institutional
Division of the Texas Department of Criminal Justice for a term of thirty-five years. 
The trial court additionally assessed a fine of $10,000.  Appellant challenges his
conviction in a single issue.  We affirm.  

Background
Facts

Texas
Ranger Michael Don Stoner worked as a narcotics agent in Palo Pinto and Parker
Counties in the fall of 2009 for the Criminal Investigation Division of the
Texas Department of Public Safety.  While working undercover on September 11,
2009, he entered appellant's residence to purchase narcotics.  Ranger Stoner
encountered Robert Earl Jefferson Jr. at appellant’s residence.  Ranger Stoner
sought to purchase $200 worth of crack cocaine from Jefferson.   Ranger Stoner
testified that, while he and Jefferson were completing the transaction,
Jefferson recognized him as a former classmate from high school.  Ranger Stoner
and Jefferson had a discussion away from the others wherein Ranger Stoner asked
Jefferson not to reveal his identity to the others.  Ranger Stoner also asked
Jefferson to contact him later for the purpose of getting Jefferson to assist Ranger
Stoner in his investigation.

Jefferson
contacted Ranger Stoner on November 13, 2009, to provide information about the
distribution of crack cocaine in the Mineral Wells area.  Ranger Stoner
testified that Jefferson provided him with the names of the individuals
involved.  Jefferson also identified the vehicles used in the distribution
process, and he informed Ranger Stoner that the drugs were being obtained in
Fort Worth.  Jefferson also told Ranger Stoner the route that the suspects
would take to and from Fort Worth.

Jefferson
subsequently contacted Ranger Stoner on November 16, 2009, to inform him that appellant,
Isidore Krishna Bridgeforth, and Brian Dukes would be going that day to
purchase cocaine in Fort Worth.  Jefferson further advised Ranger Stoner that
the suspects would be driving a maroon Dodge pickup.  Upon receiving this
information, Ranger Stoner set up surveillance on appellant’s residence in
Mineral Wells.  He observed Bridgeforth and Dukes loading appellant into the
Dodge pickup that Jefferson had described.  Ranger Stoner knew Bridgeforth and appellant
on sight.  Appellant needed their assistance getting into the vehicle because
he was handicapped.

Ranger
Stoner and two other undercover narcotics agents conducted “moving
surveillance” on appellant, Bridgeforth, and Dukes as they first ran some
errands in Mineral Wells.  The suspects  then exited Mineral Wells on FM
1195 driving through Millsap to Interstate 20 and then to Fort Worth.  After
making several stops in Fort Worth, the suspects drove to a residence on Harlem
Street in Fort Worth.  Ranger Stoner testified that the residence belonged to Wayne
Edward Allen.  He observed Bridgeforth and Dukes meeting with Allen in his
front yard.

The
agents lost surveillance of appellant, Bridgeforth, and Dukes afterwards.  Based
upon information provided by Jefferson, Ranger Stoner and the agents drove back
toward Mineral Wells on Interstate 20 in an attempt to reestablish
surveillance.  Ranger Stoner observed the Dodge pickup near the Brock exit.  Ranger
Stoner passed the suspects in the process of catching up to them.  He observed
Bridgeforth driving the pickup.  Ranger Stoner exited Interstate 20 via the Brock
exit, and the suspects did as well.  While Ranger Stoner proceeded toward
Millsap, the suspects turned onto Fairview Road.  Ranger Stoner dispatched
another agent to follow the suspects.

Bridgeforth
subsequently failed to negotiate a curve on Fairview Road, resulting in the
pickup striking a tree.  When agents arrived on the scene of the accident,
Bridgeforth and Dukes were standing outside the pickup.  Agents found a crack
pipe in a nearby ditch and a rock of crack cocaine in the bed of the pickup
near the area where Bridgeforth was standing.  While agents arrested
Bridgeforth for possession, Ranger Stoner spoke with Dukes away from the others. 
Dukes told Ranger Stoner that the group had acquired drugs in Fort Worth. 
Dukes also voluntarily removed a package containing crack cocaine from his
sweatpants and gave it to Ranger Stoner.  Ranger Stoner did not arrest Dukes at
that time.  Agents also did not arrest appellant.  Instead, ambulance personnel
transported appellant to the hospital for evaluation.

Dukes
came to see Ranger Stoner on November 17, 2009, to be interviewed.  Dukes
agreed at that time to inform Ranger Stoner if anyone affiliated with appellant
returned to Fort Worth for more drugs.  Dukes called Ranger Stoner on
November 19, 2009, to tell him that a group planned to return that day to Fort
Worth for more drugs.  Ranger Stoner established surveillance on appellant’s
residence at that time.  He subsequently observed Billy Ray Herring loading appellant
into a white Dodge pickup.  Ranger Stoner also observed Wilbert Ratliff
accompanying appellant and Herring in the pickup.

Ranger
Stoner and other agents followed the suspects’ vehicle to Fort Worth.  They
observed the suspects pulling into a church parking lot near Allen’s residence. 
While Herring looked under the hood of the pickup, Ratliff walked across the
street to Allen’s house.  Ranger Stoner testified that Ratliff was
observed meeting with Allen.  After Ratliff walked back to the pickup, the
suspects drove back to Mineral Wells with Ranger Stoner and the agents
following them.

As
the suspects entered Mineral Wells, Ranger Stoner requested State Trooper
Donnie Wright and  Mineral Wells Police Officer Scott Mitcham to stop them. 
Trooper Wright stopped the vehicle for speeding.  Trooper Wright initially spoke
with Herring outside the vehicle.   Trooper Wright subsequently removed Ratliff
from the vehicle.  Trooper Wright made the decision to arrest Ratliff when he
found a crack pipe on him.  As Trooper Wright was handcuffing Ratliff, Ratliff
threw a baggie of crack cocaine into a nearby ditch.  Trooper Wright permitted
Herring and appellant to leave, and he transported Ratliff to the DPS office
for Ranger Stoner to interview him.  Ratliff told Ranger Stoner that the
drugs that he threw in the ditch came from Allen.

Ranger
Stoner described Allen’s role in the organization as the supplier of the crack
cocaine.  Ranger Stoner testified that appellant served as the connection to
the source and supply.  Appellant also orchestrated the transport of crack
cocaine from Fort Worth and its distribution in Mineral Wells.  Ranger Stoner
described the roles of Bridgeforth, Ratliff, Dukes, Herring, and Jefferson as
assisting with the transport and distribution of crack cocaine in Mineral
Wells.  Ranger Stoner testified that the maroon Dodge pickup in which Bridgeforth,
Dukes, and appellant traveled on November 16 belonged to Allen and that Allen provided
it to appellant to use in traveling back and forth between Mineral Wells and
Fort Worth.

Jefferson
testified that Allen initially delivered cocaine to appellant at his residence
in Mineral Wells and that he did so often.  Jefferson also testified that Allen
provided appellant with the maroon Dodge pickup for the purpose of transporting
the cocaine from Fort Worth to Mineral Wells.  Jefferson stated that he,
Bridgeforth, Dukes, Ratliff, and Herring hung out at appellant’s residence and
that the money gleaned from the sale of cocaine went into appellant’s wallet.

Dukes
testified that appellant provided him with a place to stay and drugs on a daily
basis.  He admitted to traveling with appellant and Bridgeforth to Fort Worth
on November 16 to purchase cocaine from Allen.  Dukes testified that appellant
accompanied them because it was his money and he was the one purchasing the
cocaine.  Bridgeforth got the money from appellant to purchase the drugs, and
he put the cocaine in appellant’s coat pocket after the transaction occurred.  Dukes
removed the drugs from appellant at appellant’s request after the wreck
occurred.  Dukes admitted to possessing the drugs when the officers arrived at
the scene of the wreck.

When
Dukes visited with Ranger Stoner the next day, he told Ranger Stoner about the
organization and said that appellant was the “kingpin.”  Dukes testified that
everyone helped appellant because of his handicap.   He stated that the group
would go to Fort Worth several times a week to resupply and that he went along
on several occasions.  Dukes testified that appellant wanted to make the trip
on November 19, 2009, to replace the drugs that were lost when Dukes was
arrested on November 16, 2009.  Dukes also testified that he had observed Allen
coming to appellant’s residence on several earlier occasions to deliver cocaine
to appellant and that Allen gave the maroon Dodge pickup to appellant so that
Allen would not have to come to Mineral Wells.  

Ratliff
testified that he lived with appellant because he needed a place to stay and appel-lant
needed assistance.  Ratliff stated that appellant compensated him with a place
to stay and later crack cocaine.  Ratliff testified that appellant contacted
Herring on November 19 so that they could use his pickup to travel to Allen’s
residence in Fort Worth.  Ratliff testified that appellant accompanied them on
November 19 because “[h]e’s the man that took care of the business, you know.” 
Ratliff stated that they called Allen while en route to his house and that he
met Allen at his front door for the transaction.   Ratliff also testified that appellant
gave him the money to purchase the drugs.

Finally,
Officer Mitcham testified about a statement that Bridgeforth made to him on
November 11, 2009.  He stated that Bridgeforth told him as follows: “He told me
that on occasion, him and others went to Fort Worth to pick up crack cocaine.”

Underlying
Proceedings

The
grand jury indicted appellant, Allen, Bridgeforth, Herring, and Ratliff for
engaging in organized criminal activity.  The indictment alleged that they
collaborated in a combination to carry out a conspiracy to possess cocaine with
the intent to deliver.  See Tex.
Penal Code Ann. § 71.01 (West 2011), § 71.02 (West Supp. 2012).    Appellant,
Allen, and Bridgeforth were tried together.  The jury convicted all three of
engaging in organized criminal activity.[1]

Issue

In a single issue, appellant contends that the trial court should
have severed the proceedings against him and Bridgeforth because the use of
Bridgeforth’s statement in a joint trial would constitute a violation of the
Confrontation Clause under Crawford v. Washington, 541 U.S. 36, 59 (2004), because Bridgeforth would be unavailable
to testify if he invoked his right not to testify at trial.

Analysis

The trial court has the discretion to try two defendants together when they are
indicted for the same offense or any offense growing out of the same transaction.
 Tex. Code Crim. Proc. Ann. art.
36.09 (West 2007). This statute also gives the trial court the discretion to
sever the defendants upon evidence that a joint trial would prejudice the
moving defendant. Qualley v. State, 206 S.W.3d 624, 631 (Tex. Crim. App.
2006).[2]
 Article 36.09’s legislative history indicates that the legislature intended
two defendants accused of the same offense to ordinarily be tried together.  Id.
at 632.  The prejudice required to support a severance, therefore, must be more
than the circumstances or disagreements between parties that would normally be
expected to arise during any trial containing multiple defendants.  Id. 
“[T]he defendant must show a serious risk that a specific trial right would be
compromised by a joint trial, or that a joint trial would prevent the jury from
making a reliable judgment about guilt or innocence, and that the problem could
not be adequately addressed by lesser curative measures, such as a limiting
instruction.”  Id. at 636. 

Appellant
filed a written motion to sever under Article 36.09.  However, he did not
include the Confrontation Clause ground that he is now arguing on appeal.  The
written motion only included the following three grounds: (1) prejudice from
previous convictions of codefendants that would be admissible at trial; (2)
prejudice from antagonistic defenses among codefendants; and (3) prejudice from
grossly disproportionate evidence admissible against codefendants.  Because appellant’s motion for severance is predicated upon different grounds than that
advanced on appeal, he has not preserved this issue for review.  Luna v.
State, 264 S.W.3d 821, 831 (Tex. App.—Eastland 2008, no pet.); see
Qualley, 206 S.W.3d at 631.  Furthermore, we conclude that it is not an abuse of discretion for the trial court to deny a motion to sever on a
ground not raised in the motion.  See Ransonette v. State, 550 S.W.2d 36
(Tex. Crim. App. 1976); Davila v. State, 4 S.W.3d 844, 847 (Tex. App.—Eastland
1999, no pet.) (“It is not an abuse of discretion for the trial court to deny a
motion to sever when no evidence is presented to support the motion.”).  Appellant’s
sole issue on appeal is overruled.




 

This
Court’s Ruling

             The
judgment of the trial court is affirmed.

            

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

August 9, 2012

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









                [1]Allen’s appeal is docketed as Cause No. 11-10-00354-CR,
and Bridgeforth’s appeal is docketed as Cause No. 11-10-00356-CR.  

 





                [2]Article 36.09 also provides that a severance is
mandatory when one defendant has an admissible prior conviction and the person
seeking the severance does not.  This portion of the statute is not at issue in
this appeal.