**Opinion filed August 9, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00355-CR

_____

## JACKIE LYNN SMITH, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 14276B**

## MEMORANDUM OPINION

The jury convicted Jackie Lynn Smith of engaging in organized criminal activity. The trial court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of thirty-five years. The trial court additionally assessed a fine of $10,000. Appellant challenges his conviction in a single issue. We affirm.

*Background Facts*

Texas Ranger Michael Don Stoner worked as a narcotics agent in Palo Pinto and Parker Counties in the fall of 2009 for the Criminal Investigation Division of the Texas Department of

Public Safety. While working undercover on September 11, 2009, he entered appellant's residence to purchase narcotics. Ranger Stoner encountered Robert Earl Jefferson Jr. at appellant's residence. Ranger Stoner sought to purchase $200 worth of crack cocaine from Jefferson. Ranger Stoner testified that, while he and Jefferson were completing the transaction, Jefferson recognized him as a former classmate from high school. Ranger Stoner and Jefferson had a discussion away from the others wherein Ranger Stoner asked Jefferson not to reveal his identity to the others. Ranger Stoner also asked Jefferson to contact him later for the purpose of getting Jefferson to assist Ranger Stoner in his investigation.

Jefferson contacted Ranger Stoner on November 13, 2009, to provide information about the distribution of crack cocaine in the Mineral Wells area. Ranger Stoner testified that Jefferson provided him with the names of the individuals involved. Jefferson also identified the vehicles used in the distribution process, and he informed Ranger Stoner that the drugs were being obtained in Fort Worth. Jefferson also told Ranger Stoner the route that the suspects would take to and from Fort Worth.

Jefferson subsequently contacted Ranger Stoner on November 16, 2009, to inform him that appellant, Isidore Krishna Bridgeforth, and Brian Dukes would be going that day to purchase cocaine in Fort Worth. Jefferson further advised Ranger Stoner that the suspects would be driving a maroon Dodge pickup. Upon receiving this information, Ranger Stoner set up surveillance on appellant's residence in Mineral Wells. He observed Bridgeforth and Dukes loading appellant into the Dodge pickup that Jefferson had described. Ranger Stoner knew Bridgeforth and appellant on sight. Appellant needed their assistance getting into the vehicle because he was handicapped.

Ranger Stoner and two other undercover narcotics agents conducted "moving surveillance" on appellant, Bridgeforth, and Dukes as they first ran some errands in Mineral Wells. The suspects then exited Mineral Wells on FM 1195 driving through Millsap to Interstate 20 and then to Fort Worth. After making several stops in Fort Worth, the suspects drove to a residence on Harlem Street in Fort Worth. Ranger Stoner testified that the residence belonged to Wayne Edward Allen. He observed Bridgeforth and Dukes meeting with Allen in his front yard.

The agents lost surveillance of appellant, Bridgeforth, and Dukes afterwards. Based upon information provided by Jefferson, Ranger Stoner and the agents drove back toward

Mineral Wells on Interstate 20 in an attempt to reestablish surveillance. Ranger Stoner observed the Dodge pickup near the Brock exit. Ranger Stoner passed the suspects in the process of catching up to them. He observed Bridgeforth driving the pickup. Ranger Stoner exited Interstate 20 via the Brock exit, and the suspects did as well. While Ranger Stoner proceeded toward Millsap, the suspects turned onto Fairview Road. Ranger Stoner dispatched another agent to follow the suspects.

Bridgeforth subsequently failed to negotiate a curve on Fairview Road, resulting in the pickup striking a tree. When agents arrived on the scene of the accident, Bridgeforth and Dukes were standing outside the pickup. Agents found a crack pipe in a nearby ditch and a rock of crack cocaine in the bed of the pickup near the area where Bridgeforth was standing. While agents arrested Bridgeforth for possession, Ranger Stoner spoke with Dukes away from the others. Dukes told Ranger Stoner that the group had acquired drugs in Fort Worth. Dukes also voluntarily removed a package containing crack cocaine from his sweatpants and gave it to Ranger Stoner. Ranger Stoner did not arrest Dukes at that time. Agents also did not arrest appellant. Instead, ambulance personnel transported appellant to the hospital for evaluation.

Dukes came to see Ranger Stoner on November 17, 2009, to be interviewed. Dukes agreed at that time to inform Ranger Stoner if anyone affiliated with appellant returned to Fort Worth for more drugs. Dukes called Ranger Stoner on November 19, 2009, to tell him that a group planned to return that day to Fort Worth for more drugs. Ranger Stoner established surveillance on appellant's residence at that time. He subsequently observed Billy Ray Herring loading appellant into a white Dodge pickup. Ranger Stoner also observed Wilbert Ratliff accompanying appellant and Herring in the pickup.

Ranger Stoner and other agents followed the suspects' vehicle to Fort Worth. They observed the suspects pulling into a church parking lot near Allen's residence. While Herring looked under the hood of the pickup, Ratliff walked across the street to Allen's house. Ranger Stoner testified that Ratliff was observed meeting with Allen. After Ratliff walked back to the pickup, the suspects drove back to Mineral Wells with Ranger Stoner and the agents following them.

As the suspects entered Mineral Wells, Ranger Stoner requested State Trooper Donnie Wright and Mineral Wells Police Officer Scott Mitcham to stop them. Trooper Wright stopped the vehicle for speeding. Trooper Wright initially spoke with Herring outside the vehicle.

Trooper Wright subsequently removed Ratliff from the vehicle. Trooper Wright made the decision to arrest Ratliff when he found a crack pipe on him. As Trooper Wright was handcuffing Ratliff, Ratliff threw a baggie of crack cocaine into a nearby ditch. Trooper Wright permitted Herring and appellant to leave, and he transported Ratliff to the DPS office for Ranger Stoner to interview him. Ratliff told Ranger Stoner that the drugs that he threw in the ditch came from Allen.

Ranger Stoner described Allen's role in the organization as the supplier of the crack cocaine. Ranger Stoner testified that appellant served as the connection to the source and supply. Appellant also orchestrated the transport of crack cocaine from Fort Worth and its distribution in Mineral Wells. Ranger Stoner described the roles of Bridgeforth, Ratliff, Dukes, Herring, and Jefferson as assisting with the transport and distribution of crack cocaine in Mineral Wells. Ranger Stoner testified that the maroon Dodge pickup in which Bridgeforth, Dukes, and appellant traveled on November 16 belonged to Allen and that Allen provided it to appellant to use in traveling back and forth between Mineral Wells and Fort Worth.

Jefferson testified that Allen initially delivered cocaine to appellant at his residence in Mineral Wells and that he did so often. Jefferson also testified that Allen provided appellant with the maroon Dodge pickup for the purpose of transporting the cocaine from Fort Worth to Mineral Wells. Jefferson stated that he, Bridgeforth, Dukes, Ratliff, and Herring hung out at appellant's residence and that the money gleaned from the sale of cocaine went into appellant's wallet.

Dukes testified that appellant provided him with a place to stay and drugs on a daily basis. He admitted to traveling with appellant and Bridgeforth to Fort Worth on November 16 to purchase cocaine from Allen. Dukes testified that appellant accompanied them because it was his money and he was the one purchasing the cocaine. Bridgeforth got the money from appellant to purchase the drugs, and he put the cocaine in appellant's coat pocket after the transaction occurred. Dukes removed the drugs from appellant at appellant's request after the wreck occurred. Dukes admitted to possessing the drugs when the officers arrived at the scene of the wreck.

When Dukes visited with Ranger Stoner the next day, he told Ranger Stoner about the organization and said that appellant was the "kingpin." Dukes testified that everyone helped appellant because of his handicap. He stated that the group would go to Fort Worth several

4

times a week to resupply and that he went along on several occasions. Dukes testified that appellant wanted to make the trip on November 19, 2009, to replace the drugs that were lost when Dukes was arrested on November 16, 2009. Dukes also testified that he had observed Allen coming to appellant's residence on several earlier occasions to deliver cocaine to appellant and that Allen gave the maroon Dodge pickup to appellant so that Allen would not have to come to Mineral Wells.

Ratliff testified that he lived with appellant because he needed a place to stay and appellant needed assistance. Ratliff stated that appellant compensated him with a place to stay and later crack cocaine. Ratliff testified that appellant contacted Herring on November 19 so that they could use his pickup to travel to Allen's residence in Fort Worth. Ratliff testified that appellant accompanied them on November 19 because "[h]e's the man that took care of the business, you know." Ratliff stated that they called Allen while en route to his house and that he met Allen at his front door for the transaction. Ratliff also testified that appellant gave him the money to purchase the drugs.

Finally, Officer Mitcham testified about a statement that Bridgeforth made to him on November 11, 2009. He stated that Bridgeforth told him as follows: "He told me that on occasion, him and others went to Fort Worth to pick up crack cocaine."

*Underlying Proceedings*

The grand jury indicted appellant, Allen, Bridgeforth, Herring, and Ratliff for engaging in organized criminal activity. The indictment alleged that they collaborated in a combination to carry out a conspiracy to possess cocaine with the intent to deliver. *See* TEX. PENAL CODE ANN. § 71.01 (West 2011), § 71.02 (West Supp. 2012). Appellant, Allen, and Bridgeforth were tried together. The jury convicted all three of engaging in organized criminal activity.[1]

*Issue*

In a single issue, appellant contends that the trial court should have severed the proceedings against him and Bridgeforth because the use of Bridgeforth's statement in a joint trial would constitute a violation of the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36, 59 (2004), because Bridgeforth would be unavailable to testify if he invoked his right not to testify at trial.

---

[1]Allen's appeal is docketed as Cause No. 11-10-00354-CR, and Bridgeforth's appeal is docketed as Cause No. 11-10-00356-CR.

*Analysis*

The trial court has the discretion to try two defendants together when they are indicted for the same offense or any offense growing out of the same transaction. TEX. CODE CRIM. PROC. ANN. art. 36.09 (West 2007). This statute also gives the trial court the discretion to sever the defendants upon evidence that a joint trial would prejudice the moving defendant. *Qualley v. State*, 206 S.W.3d 624, 631 (Tex. Crim. App. 2006).[2] Article 36.09's legislative history indicates that the legislature intended two defendants accused of the same offense to ordinarily be tried together. *Id*. at 632. The prejudice required to support a severance, therefore, must be more than the circumstances or disagreements between parties that would normally be expected to arise during any trial containing multiple defendants. *Id*. "[T]he defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction." *Id*. at 636.

Appellant filed a written motion to sever under Article 36.09. However, he did not include the Confrontation Clause ground that he is now arguing on appeal. The written motion only included the following three grounds: (1) prejudice from previous convictions of codefendants that would be admissible at trial; (2) prejudice from antagonistic defenses among codefendants; and (3) prejudice from grossly disproportionate evidence admissible against codefendants. Because appellant's motion for severance is predicated upon different grounds than that advanced on appeal, he has not preserved this issue for review. *Luna v. State*, 264 S.W.3d 821, 831 (Tex. App.—Eastland 2008, no pet.); s*ee Qualley*, 206 S.W.3d at 631. Furthermore, we conclude that it is not an abuse of discretion for the trial court to deny a motion to sever on a ground not raised in the motion. *See Ransonette v. State*, 550 S.W.2d 36 (Tex. Crim. App. 1976); *Davila v. State*, 4 S.W.3d 844, 847 (Tex. App.—Eastland 1999, no pet.) ("It is not an abuse of discretion for the trial court to deny a motion to sever when no evidence is presented to support the motion."). Appellant's sole issue on appeal is overruled.

---

[2]Article 36.09 also provides that a severance is mandatory when one defendant has an admissible prior conviction and the person seeking the severance does not. This portion of the statute is not at issue in this appeal.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

August 9, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.