# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00513-CR

**Froylan Padilla, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-06-204578, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Froylan Padilla guilty of engaging in organized criminal activity and assessed his punishment at nine years' imprisonment. *See* Tex. Penal Code Ann. § 71.02 (West Supp. 2008). Appellant contends that the district court erred by overruling his motion for a severance, that his trial counsel rendered ineffective assistance, and that the evidence is legally and factually insufficient to sustain the verdict of guilt. We overrule these issues and affirm the conviction.

## BACKGROUND

On the evening in question, several people including appellant and his friend Rodolfo Orive were gathered on the grounds of an Austin middle school practicing dances for an upcoming quinceanera. A car drove past the school, and hand signs were exchanged between the occupants of the car and Orive. The driver of the car, Vidal Lopez, told his companions that he had

had problems with Orive in the past. Although his friends urged him to drive on, Lopez decided to stop and confront Orive. When they saw Lopez stop, appellant, Orive, and Victor Sarmiento ran to Orive's car, retrieved a pistol belonging to Sarmiento, and returned to the rehearsal scene.

After stopping, Lopez and two of his companions approached the quinceanera group and announced that Lopez wanted to fight Orive. Orive accepted the challenge. It was agreed that this would be a "clean fight" between the two using no weapons. The combatants and a number of spectators moved to the rear parking lot of the school, and the fight commenced. Lopez soon got the upper hand, forcing Orive to his knees and placing him in what was described as a head lock or choke hold. Some witnesses testified that Orive's face was turning purple and that he appeared to have trouble breathing. Another witness testified that Orive's life did not appear to be in danger, although he was clearly losing the fight. Orive himself testified, "I couldn't talk, I couldn't breathe, I couldn't do anything. I was afraid for my life."

At this point, appellant walked over to the two fighters, pointed Sarmiento's pistol at Lopez, and ordered him to release Orive. Lopez complied with this order. Orive then stood, took the pistol from appellant, and fatally shot Lopez just below his right eye. Orive testified that he shot Lopez because he was "afraid for my life." According to Orive, Lopez told him that "if we would not shoot him, he was going to do it to us," and put his hand behind his back. Orive testified that he believed that if he did not shoot Lopez, Lopez would shoot him. Other witnesses testified that they did not hear Lopez say anything to Orive, and there is no evidence that Lopez or anyone with him was armed. One witness testified that Orive told Lopez "you are now f---ed" before shooting him.

2

Appellant and Orive left the scene in a black car and drove to a house a few blocks away, where they were seen speaking to a man and walking to the side of the house before running away on foot. Police later found several bullets under the air conditioning unit at the side of this house. Near midnight, appellant and Orive went to the home of Luz Marie Gallego, the mother of Orive's former girlfriend. Gallego testified that Orive "looked bad" and that "[h]e couldn't speak very well." Orive told Gallego that he had "killed a guy" and was thinking of going to Mexico. Appellant and Orive were arrested later that night when a Jeep Cherokee in which they were occupants was stopped for speeding. Both men gave false names to the officers. Several packed suitcases were found in the Jeep.

## SUFFICIENCY OF EVIDENCE

The indictment alleged and the jury found that appellant assaulted Lopez with a deadly weapon as a member of a criminal street gang. *See id*. §§ 22.02(a)(2) (aggravated assault), 71.02(a)(1) (engaging in organized criminal activity). Appellant contends that the evidence is factually insufficient to support the jury's finding that he committed an unjustified aggravated assault and legally insufficient to support the jury's finding that he was a member of a criminal street gang.

### *Aggravated Assault*

The jury charge included an instruction on the defense of third persons. *See id*. § 9.33 (West 2003). Appellant urges that the evidence is factually insufficient to support the jury's finding that he was not justified in assaulting Lopez in defense of Orive.

3

When there is a challenge to the factual sufficiency of the evidence to support the rejection of a defense, we apply the usual factual sufficiency standard of review. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the jury's finding is so weak as to make the finding clearly wrong or manifestly unjust, or if the finding is against the great weight and preponderance of the available evidence. *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

A person is justified in using force or deadly force against another to protect a third person if, under the circumstances as the actor reasonably believes them to be, the actor would be justified in using force or deadly force to protect himself against the unlawful force or deadly force he reasonably believes to be threatening the third person he seeks to protect. Tex. Penal Code Ann. § 9.33. In other words, appellant was justified in using force or deadly force against Lopez in defense of Orive to the extent that Orive was justified in using such force against Lopez in his own defense. *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986).

The use of force against another is not justified if the actor consented to the exact force used or attempted by the other.  Tex. Penal Code Ann. § 9.31(b)(3) (West Supp. 2008).  Appellant argues that although Orive agreed to fight Lopez, he did not agree to Lopez's use of a choke hold that left Orive unable to speak or breathe.  The evidence was undisputed, however, that the parties agreed only that no weapons would be used in the fight.  There is no basis in the evidence for appellant's assertion that Lopez and Orive had agreed that the fight would be over, or would be temporarily suspended, if one of the fighters fell to the ground.  It was neither manifestly unjust nor against the great weight of the available evidence for the jury to conclude that Orive, by agreeing to fight Lopez, consented to the exact force used by Lopez in the fight.

Appellant also seeks to invoke the presumption that the use of force is reasonable if the actor knew or had reason to believe that the person against whom the force was used was committing or attempting to commit murder. *Id*. § 9.31(a)(1)(A).  This presumption was added to section 9.31 effective September 1, 2007, and was not in effect at the time of this offense. *See* Act of Mar. 20, 2007, 80th Leg., R.S., ch. 1, §§ 2, 5, 2007 Tex. Gen. Laws 1, 2.

Considering all the evidence in a neutral light, we hold that it was not clearly wrong or manifestly unjust for the jury to find that appellant was not justified in assaulting Lopez with a deadly weapon in defense of Orive.  Moreover, this finding was not against the great weight and preponderance of the available evidence.

*Gang Membership*

Appellant contends that the evidence is legally insufficient to support the jury's finding that he assaulted Lopez as a member of a criminal street gang.  We may disturb the

5

jury's finding only if, after reviewing the evidence in the light most favorable to the finding, we conclude that no rational trier of fact could have found this element of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A criminal street gang is three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities. Tex. Penal Code Ann. § 71.01(d) (West 2003). The State sought to prove that appellant and Orive were members of an Austin gang known as the South Side Crips, or simply Crips. Detective David Fugitt, the homicide detective in charge of the investigation of this incident, testified that he was familiar with the South Side Crips. The detective testified that the Crips had more than three members, had common signs and identifying marks, and were regularly involved in criminal activity in Travis County. Appellant argues that "merely saying it doesn't necessarily make it so," but we must assume that the jury found the officer's testimony to be credible.

Persons who witnessed the incident at the middle school testified that appellant, Orive, and Sarmiento were wearing blue clothing. Austin police officers testified that blue is a color favored by the South Side Crips. Lopez was wearing red shoes, suggesting that he was a member of a different gang. As one witness who was present at the quinceanera rehearsal and saw the fight testified, "[Y]ou could tell kind of that it was gang-related since they were wearing blue and the other guy was wearing red." One of the persons who was in the car with Lopez testified that on the night following the shooting, Orive called him on the telephone and told him that "I shouldn't say anything and that I should tell my friends that they should say nothing either because if somebody went down on his side they were also going to go down on our side."

6

Fugitt testified that appellant was wearing blue clothing and carrying a blue bandanna at the time of his arrest.[1]  Another officer testified that members of the Crips wore blue bandannas to show their gang affiliation.  One of the suitcases found with appellant in the Jeep Cherokee contained, in addition to a number of items of blue clothing, a T-shirt (State's exhibit 17) on which was written the names "Froy" and "Jackie."  Jacqueline Diaz was another person in the Jeep with appellant.  This T-shirt also had the word "slob" and the initials "BK" on it.  Fugitt testified that "slob" is a derogatory term for a member of the Bloods gang and "BK" stands for "blood killer."  Also printed on this shirt was the number 78704 and the words "South Side."  Fugitt testified that 78704 is a postal code for South Austin.

A sweatshirt (State's exhibit 18) was also found in the Jeep.  Printed on this shirt was a symbol with the words "Dove Springs" surrounding a hand, the number 27, and a flying dove.  Fugitt testified that the number 27 was short for 78727, another South Austin postal code in which the Dove Springs neighborhood is located.  The detective said that the hand was making a gesture that meant "BK" or "blood killer."  In State's exhibit 21, a photograph of appellant and Orive, Orive appears to be making the same hand gesture.[2]

---

[1]  The record contains a copy of a photograph of appellant taken following his arrest (State's exhibit 20), but the copy is not in color.

[2]  There was additional evidence regarding Orive's membership in the South Side Crips.  An officer who searched Orive's bedroom following his arrest testified that it was decorated predominantly in blue.  The officer recalled finding seven or eight blue bandannas in Orive's bedroom.  In a notebook, Orive had written "vistazo Bloods," which the officer translated as "looking for blood," and "BK all day every day."  This officer also testified that "BK" was shorthand for "blood killer," a term commonly used by the Crips.  The trial court instructed the jury to consider this evidence only with respect to Orive's guilt.

7

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that appellant was a member of the South Side Crips and that the Crips are a criminal street gang. The evidence is legally sufficient to support the jury's determination that appellant assaulted Lopez as a member of a criminal street gang.

## SEVERANCE

Orive was indicted for murdering Lopez, and he and appellant were tried together after appellant's motion for a severance was denied. Appellant contends that the trial court erred by denying the severance.

Upon a timely motion supported by evidence, a defendant is entitled to a severance if his co-defendant has a previous admissible conviction or if a joint trial would prejudice the moving defendant. Tex. Code Crim. Proc. Ann. art. 36.09 (West 2007); *Qualley v. State*, 206 S.W.3d 624, 631 (Tex. Crim. App. 2006). It is undisputed that appellant's motion to sever was timely. It is also undisputed that Orive had no admissible previous convictions. Therefore, the issue is whether appellant met his burden of demonstrating that he would be prejudiced by a joint trial.

To establish prejudice, a defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction. *Qualley v. State*, 206 S.W.3d 624, 636 (Tex. Crim. App. 2006). Appellant argues that he was entitled to a severance as a matter of law because he demonstrated that there was a substantial risk that the jury would find him guilty by

association with Orive. Alternatively, appellant argues that the trial court abused its discretion by denying the severance because evidence was admitted at the joint trial that would not have been admissible if appellant had been tried separately. We conclude that appellant did not show himself entitled to a severance and that the trial court did not abuse its discretion by denying the severance motion.[3]

In his motion to sever, appellant urged that he would be prejudiced by a joint trial with Orive "because the quantity of evidence against [Orive] is grossly disproportionate to that against [appellant]." At the hearing on the motion, appellant's counsel repeated this contention and urged that the evidence regarding Orive's murder of Lopez "[had] nothing to do" with the offense for which appellant was on trial. After the prosecutor briefly summarized the facts, the court expressed the view that even if appellant were tried separately, the fact that Orive murdered Lopez would be admissible to place appellant's offense in context. The court denied the motion on this basis.

---

[3] According to the leading commentary on Texas criminal procedure, the court of criminal appeals has long regarded a co-defendant's previous admissible conviction as the only mandatory ground for severance under article 36.09 and has treated the prejudice provision as being discretionary with the trial court. 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 33.41 (2d ed. 2001) (citing *Robinson v. State*, 449 S.W.2d 239, 240-41 (Tex. Crim. App. 1969); *see also Mulder v. State*, 707 S.W.2d 908, 915 (Tex. Crim. App. 1986). More recently, some opinions have suggested that prejudice to the moving defendant may be either a mandatory or a discretionary ground for severance under the statute, depending on the nature or degree of the prejudice. *See, e.g., Marsh v. State*, 115 S.W.3d 709, 717 (Tex. App.—Austin 2003, pet. ref'd) (stating that absent evidence of prejudice to one defendant in joint trial or evidence that one defendant has prior admissible conviction, grant of severance is discretionary; discretion is abused only if movant satisfies heavy burden of showing clear prejudice); *King v. State*, 17 S.W.3d 7, 16-17 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (same). *But see Peterson v. State*, 961 S.W.2d 308, 310 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (stating that severance pursuant to article 36.09 is not matter of right but rests within sound discretion of trial court).

Both of appellant's arguments—that he was entitled to a mandatory severance and that the trial court abused its discretion—are premised on the assertion that Orive's murder of Lopez was irrelevant to appellant's guilt and would have been inadmissible had appellant been tried separately. But as the trial court noted at the hearing on the severance motion, appellant's assault of Lopez and Orive's murder of Lopez with the same pistol were so closely interrelated that they formed an indivisible criminal transaction; in other words, the fact of the murder would have been admissible at a separate trial as same-transaction contextual evidence. *See Prible v. State*, 175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005). Although some of the evidence regarding the murder, such as the autopsy report, and some of the evidence regarding Orive's gang ties and threats to witnesses might not have been admitted had appellant been tried separately, much of this evidence was introduced with a limiting instruction so as to avoid prejudicing appellant. *See supra*, note 2. Appellant points to no evidence that the limiting instructions were ineffective or that the jury was unable to distinguish between the evidence of Orive's guilt and the evidence of appellant's guilt. Appellant did not show that there was a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about his guilt or innocence. The trial court's denial of the requested severance was not an abuse of discretion or otherwise erroneous.

**EFFECTIVENESS OF COUNSEL**

Appellant's final contention is that his trial counsel rendered ineffective assistance. To prevail on this claim, appellant must show that counsel made such serious errors that she was not functioning effectively as counsel and that these errors prejudiced his defense to such a degree that

he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). In reviewing a claim of ineffective assistance, we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Appellant argues that his trial counsel was ineffective in three respects. First, he complains that counsel declined the trial court's offer to instruct the jury on the lesser included offense of aggravated assault. There is no evidence in the record as to why counsel did not want the lesser included offense instruction, but it is likely that she was pursuing an all-or-nothing strategy. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004); *Shanklin v. State*, 190 S.W.3d 154, 161 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315, 316 (Tex. Crim. App. 2007). Appellant complains that this strategy was a mistake because the State had failed to prove that he was a member of a criminal street gang. We have already found the evidence sufficient in this regard, but if the State had in fact failed to prove that appellant was a member of a gang, counsel's strategy would have benefitted appellant because the jury, or this Court on appeal, would have been required to render an acquittal. *See Haynes v. State*, No. PD-1923-06, 2008 Tex. Crim. App. LEXIS 569, at *1 (Tex. Crim. App. Apr. 30, 2008); *Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999). Although, under the circumstances as they actually were, a different attorney might have accepted the trial court's offer, we cannot say that no reasonable professional attorney would have chosen the strategy employed by appellant's counsel in this case.

11

Next, appellant urges that his trial counsel was ineffective because she failed to object to an improper jury argument by the prosecutor. While discussing appellant's claim that he assaulted Lopez in defense of Orive, the prosecutor argued, "[I]t's not enough for him to say I was protecting my friend. The law is very specific on what must occur to be entitled to a justification. Specifically, the use of deadly force can only be used when necessary to the degree necessary, when and to the degree you believe it to be necessary." The prosecutor added, "But there is more. It has to be against the use or attempted use of unlawful deadly force." Appellant argues that the prosecutor was mistaken in characterizing appellant's conduct as the use of deadly force. The State disputes this, asserting that a person who points a loaded pistol at another uses deadly force.

Neither appellant nor the State mentions the trial court's instruction to the jury that "[a] threat to cause death or serious bodily injury by the production of a weapon, as long as the defendant's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force." *See* Tex. Penal Code Ann. § 9.04 (West 2003). In light of this instruction, we are confident that any error in the prosecutor's argument did not effect the jury's verdict. Moreover, we must assess the totality of defense counsel's representation, rather than isolated acts or omissions. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986); *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). Considering counsel's performance as a whole, her failure to object to this one alleged misstatement by the prosecutor did not render her overall representation of appellant ineffective.

Finally, appellant urges that his counsel was ineffective because she did not perfect error regarding the State's failure to advise him of his right to contact the Mexican consulate following his arrest. *See Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). This

12

contention rests on two factual assumptions: (1) that appellant is a citizen of Mexico, and (2) that appellant was not advised of his right to notify the Mexican consulate following his arrest. The State argues that neither of these facts is established by the record.

We believe that the record substantiates appellant's status as a foreign national, if not his claim to be a citizen of Mexico. Appellant's mother, who testified at the punishment stage, referred to appellant as an "immigrant." During his own punishment testimony, appellant acknowledged in response to a question from the prosecutor that he was "subject to deportation if [he is] released from jail." There is, however, no evidence that appellant was not told of his right to seek assistance from his consulate following his arrest. Counsel cannot be ineffective for failing to perfect a nonexistent error. Moreover, even if a violation of the Vienna Convention is assumed, appellant does not develop any argument as to how the outcome of his trial would have been different had his lawyer objected to the violation. *See Cardenas v. State*, 30 S.W.3d 384, 391 (Tex. Crim. App. 2000).

On this record, appellant has not met his burden of persuasion regarding the alleged ineffectiveness of his trial counsel. Appellant's contention that he was denied effective assistance of counsel at trial is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: December 31, 2008

Do Not Publish

13