Opinion filed August 9,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00356-CR

                                                    __________

 

                     ISIDORE
KRISHNA BRIDGEFORTH, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 29th District Court

 

                                                         Palo
Pinto County, Texas

 

                                                    Trial
Court Cause No. 14276C

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Isidore Krishna Bridgeforth of engaging in organized criminal
activity.  The trial court assessed his punishment at confinement in the
Institutional Division of the Texas Department of Criminal Justice for a term
of thirty-five years.  The trial court additionally assessed a fine of $10,000. 
Appellant challenges his conviction in four issues.  We affirm.

Background
Facts

Texas
Ranger Michael Don Stoner worked as a narcotics agent in Palo Pinto and Parker
Counties in the fall of 2009 for the Criminal Investigation Division of the
Texas Department of Public Safety.  While working undercover on September 11,
2009, he entered Jackie Lynn Smith’s residence to purchase narcotics.  Ranger Stoner
encountered Robert Earl Jefferson Jr. at Smith’s residence.  Ranger Stoner
sought to purchase $200 worth of crack cocaine from Jefferson.  Ranger Stoner
testified that, while he and Jefferson were completing the transaction,
Jefferson recognized him as a former classmate from high school.  Ranger Stoner
and Jefferson had a discussion away from the others wherein Ranger Stoner asked
Jefferson not to reveal his identity to the others.  Ranger Stoner also asked
Jefferson to contact him later for the purpose of getting Jefferson to assist Ranger
Stoner in his investigation.

Jefferson
contacted Ranger Stoner on November 13, 2009, to provide information about the
distribution of crack cocaine in the Mineral Wells area.  Ranger Stoner
testified that Jefferson provided him with the names of the individuals
involved.  Jefferson also identified the vehicles used in the distribution
process, and he informed Ranger Stoner that the drugs were being obtained in
Fort Worth.  Jefferson also told Ranger Stoner the route that the suspects would
take to and from Fort Worth.

Jefferson
subsequently contacted Ranger Stoner on November 16, 2009, to inform him that
Smith, appellant, and Brian Dukes would be going that day to purchase cocaine
in Fort Worth.  Jefferson further advised Ranger Stoner that the suspects would
be driving a maroon Dodge pickup.  Upon receiving this information, Ranger Stoner
set up surveillance on Smith’s residence in Mineral Wells.  He observed appellant
and Dukes loading Smith into the Dodge pickup that Jefferson had described.  Ranger
Stoner knew appellant and Smith on sight.  Smith needed their assistance
getting into the vehicle because he was handicapped.

Ranger
Stoner and two other undercover narcotics agents conducted “moving
surveillance” on Smith, appellant, and Dukes as they first ran some errands in
Mineral Wells.  The suspects then exited Mineral Wells on FM 1195 driving
through Millsap to Interstate 20 and then to Fort Worth.  After making several
stops in Fort Worth, the suspects drove to a residence on Harlem Street in Fort
Worth.  Ranger Stoner testified that the residence belonged to Wayne Edward Allen. 
He observed appellant and Dukes meeting with Allen in his front yard.

The
agents lost surveillance of Smith, appellant, and Dukes afterwards.  Based upon
information provided by Jefferson, Ranger Stoner and the agents drove back
toward Mineral Wells on Interstate 20 in an attempt to reestablish
surveillance.  Ranger Stoner observed the Dodge pickup near the Brock exit.  Ranger
Stoner passed the suspects in the process of catching up to them.  He observed appellant
driving the pickup.  Ranger Stoner exited Interstate 20 via the Brock exit, and
the suspects did as well.  While Ranger Stoner proceeded toward Millsap, the
suspects turned onto Fairview Road.  Ranger Stoner dispatched another agent to
follow the suspects.

Appellant
subsequently failed to negotiate a curve on Fairview Road, resulting in the
pickup striking a tree.  When agents arrived on the scene of the accident, appellant
and Dukes were standing outside the pickup.  Agents found a crack pipe in a
nearby ditch and a rock of crack cocaine in the bed of the pickup near the area
where appellant was standing.  While agents arrested appellant for possession, Ranger
Stoner spoke with Dukes away from the others.  Dukes told Ranger Stoner that
the group had acquired drugs in Fort Worth.  Dukes also voluntarily removed a
package containing crack cocaine from his sweatpants and gave it to Ranger Stoner. 
Ranger Stoner did not arrest Dukes at that time.  Agents also did not arrest
Smith.  Instead, ambulance personnel transported Smith to the hospital for
evaluation.

Dukes
came to see Ranger Stoner on November 17, 2009, to be interviewed.  Dukes
agreed at that time to inform Ranger Stoner if anyone affiliated with Smith
returned to Fort Worth for more drugs.  Dukes called Ranger Stoner on November
19, 2009, to tell him that a group planned to return that day to Fort Worth for
more drugs.  Ranger Stoner established surveillance on Smith’s residence at
that time.  He subsequently observed Billy Ray Herring loading Smith into a
white Dodge pickup.  Ranger Stoner also observed Wilbert Ratliff accompanying
Smith and Herring in the pickup.

Ranger
Stoner and other agents followed the suspects’ vehicle to Fort Worth.  They
observed the suspects pulling into a church parking lot near Allen’s
residence.  While Herring looked under the hood of the pickup, Ratliff walked
across the street to Allen’s house.  Ranger Stoner testified that Ratliff was
observed meeting with Allen.  After Ratliff walked back to the pickup, the
suspects drove back to Mineral Wells with Ranger Stoner and the agents
following them.

As
the suspects entered Mineral Wells, Ranger Stoner requested State Trooper
Donnie Wright and Mineral Wells Police Officer Scott Mitcham to stop them.  Trooper
Wright stopped the vehicle for speeding.  Trooper Wright initially spoke with
Herring outside the vehicle.   Trooper Wright subsequently removed Ratliff from
the vehicle.  Trooper Wright made the decision to arrest Ratliff when he found
a crack pipe on him.  As Trooper Wright was handcuffing Ratliff, Ratliff threw
a baggie of crack cocaine into a nearby ditch.  Trooper Wright permitted
Herring and Smith to leave, and he transported Ratliff to the DPS office for Ranger
Stoner to interview him.  Ratliff told Ranger Stoner that the drugs that he
threw in the ditch came from Allen.

Ranger
Stoner described Allen’s role in the organization as the supplier of the crack
cocaine.  Ranger Stoner testified that Smith served as the connection to the
source and supply.  Smith also orchestrated the transport of crack cocaine from
Fort Worth and its distribution in Mineral Wells.  Ranger Stoner described the
roles of appellant, Ratliff, Dukes, Herring, and Jefferson as assisting with
the transport and distribution of crack cocaine in Mineral Wells.  Ranger Stoner
testified that the maroon Dodge pickup in which appellant, Dukes, and Smith
traveled on November 16 belonged to Allen and that Allen provided it to Smith
to use in traveling back and forth between Mineral Wells and Fort Worth.

Jefferson
testified that Allen initially delivered cocaine to Smith at his residence in
Mineral Wells and that he did so often.  Jefferson also testified that Allen
provided Smith with the maroon Dodge pickup for the purpose of transporting the
cocaine from Fort Worth to Mineral Wells.  Jefferson stated that he, appellant,
Dukes, Ratliff, and Herring hung out at Smith’s residence and that the money
gleaned from the sale of cocaine went into Smith’s wallet.

Dukes
testified that Smith provided him with a place to stay and drugs on a daily
basis.  He admitted to traveling with Smith and appellant to Fort Worth on
November 16 to purchase cocaine from Allen.  Dukes testified that Smith
accompanied them because it was his money and he was the one purchasing the
cocaine.  Appellant got the money from Smith to purchase the drugs, and he put
the cocaine in Smith’s coat pocket after the transaction occurred.  Dukes
removed the drugs from Smith at Smith’s request after the wreck occurred. 
Dukes admitted to possessing the drugs when the officers arrived at the scene
of the wreck.

When
Dukes visited with Ranger Stoner the next day, he told Ranger Stoner about the
organization and said that Smith was the “kingpin.”  Dukes testified that
everyone helped Smith because of his handicap.  He stated that the group would
go to Fort Worth several times a week to resupply and that he went along on
several occasions.  Dukes testified that Smith wanted to make the trip on
November 19, 2009, to replace the drugs that were lost when Dukes was arrested
on November 16, 2009.  Dukes also testified that he had observed Allen coming
to Smith’s residence on several earlier occasions to deliver cocaine to Smith
and that Allen gave the maroon Dodge pickup to Smith so that Allen would not
have to come to Mineral Wells.

Ratliff
testified that he lived with Smith because he needed a place to stay and Smith
needed assistance.  Ratliff stated that Smith compensated him with a place to
stay and later crack cocaine.  Ratliff testified that Smith contacted Herring
on November 19 so that they could use his pickup to travel to Allen’s residence
in Fort Worth.  Ratliff testified that Smith accompanied them on November 19
because “[h]e’s the man that took care of the business, you know.”  Ratliff
stated that they called Allen while en route and that he met Allen at his door
for the transaction.  Ratliff also testified that Smith gave him the money to
purchase the drugs.

Underlying
Proceedings

The
grand jury indicted appellant, Allen, Smith, Herring, and Ratliff for engaging
in organized criminal activity.  The indictment alleged that they collaborated
in a combination to carry out a conspiracy to possess cocaine with the intent
to deliver.  See Tex. Penal Code
Ann. § 71.01 (West 2011), § 71.02 (West Supp. 2012).  Appellant, Allen,
and Smith were tried together.  The jury convicted all three of engaging in
organized criminal activity.[1]

Issues

Appellant asserts in his first issue that the trial court erred in
denying his motion to sever his trial from that of the other defendants.  In
his second issue, he attacks the sufficiency of the evidence supporting the
corroboration of accomplice testimony.  Appellant asserts in his third issue
that the trial court erred in allowing the admission of his out-of-court
statement.  In his fourth issue, appellant contends that the trial court erred
by failing to enter written findings of fact and conclusions of law concerning
the voluntariness of his statement.

Severance

The trial court has the discretion to try two defendants together when they are
indicted for the same offense or any offense growing out of the same
transaction.  Tex. Code Crim. Proc. Ann.
art 36.09 (West 2007).  This statute also gives the trial court the discretion
to sever the defendants upon evidence that a joint trial would prejudice the
moving defendant.  Qualley v. State, 206 S.W.3d 624, 631 (Tex. Crim. App.
2006).[2]
 Article 36.09’s legislative history indicates that the legislature intended
two defendants accused of the same offense to ordinarily be tried together.  Id.
at 632.  The prejudice required to support a severance, therefore, must be more
than the circumstances or disagreements between parties that would normally be
expected to arise during any trial containing multiple defendants.  Id. 
“[T]he defendant must show a serious risk that a specific trial right would be
compromised by a joint trial, or that a joint trial would prevent the jury from
making a reliable judgment about guilt or innocence, and that the problem could
not be adequately addressed by lesser curative measures, such as a limiting
instruction.”  Id. at 636.

Appellant
filed a written motion to sever under Article 36.09, alleging numerous
grounds.  He argues on appeal that the trial court erred in overruling his
motion because the evidence of his codefendants’ guilt was grossly
disproportionate to his guilt and because the codefendants had antagonistic
defenses.  However, appellant did not present any evidence at the hearing on
the motion to sever.  Instead, he relied upon the arguments of counsel to
support the motion.  The defendant seeking severance must offer evidence to
support his motion. It is not an abuse of discretion for the trial court to
deny a motion to sever when no evidence is presented to support the motion.  Ransonette
v. State, 550 S.W.2d 36 (Tex. Crim. App. 1976); Davila v. State, 4
S.W.3d 844, 847 (Tex. App.—Eastland 1999, no pet.).  Furthermore, varying culpability between codefendants does not alone warrant severance.  Davila,
4 S.W.3d at 847.  The record does not establish prejudice under Qualley because it does not show a serious risk that a specific trial right of
appellant would be compromised by a joint trial or that a joint trial would
prevent the jury from making a reliable judgment about guilt or innocence.

Appellant
additionally asserts that the motion to sever should have been granted because
accomplice testimony would be admitted against him in a joint trial and because
evidence of activities occurring after November 16 would be admitted.  However,
these grounds were not presented in the motion to sever.  Therefore, they are
waived.  Appellant’s first issue is overruled.

Corroboration
of Accomplice Testimony

Article
38.14 of the Code of Criminal Procedure provides that a conviction cannot be
upheld on the basis of accomplice testimony unless it is corroborated by “other
evidence tending to connect the defendant with the offense committed.”  Tex. Code Crim. Proc. Ann. art. 38.14
(West 2005).  In reviewing the sufficiency of the corroborating evidence, we
eliminate the accomplice testimony from consideration and focus on the
remaining portions of the record to determine whether there is any evidence
that tends to connect the defendant with the commission of the crime.  Solomon
v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); Cathey v. State,
992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999).  The corroborating evidence may
be direct or circumstantial and need not be sufficient by itself to establish
the defendant’s guilt; it is sufficient if the combined weight of the
non-accomplice evidence tends to connect the defendant to the offense.  Solomon,
49 S.W.3d at 361; Gosch v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991).
A defendant’s mere presence at the scene of the crime is by itself insufficient
corroboration; however, presence combined with other suspicious circumstances
may be enough to tend to connect the defendant.  Dowthitt v. State, 931
S.W.2d 244, 249 (Tex. Crim. App. 1996); Cox v. State, 830 S.W.2d 609,
611 (Tex. Crim. App. 1992).  Similarly, evidence that the defendant was in the
presence of the accomplice at or near the time or place of the offense is
proper corroborating evidence.  McDuff v. State, 939 S.W.2d 607, 612
(Tex. Crim. App. 1997).

Ranger
Stoner provided the bulk of the non-accomplice testimony in this case.  He
testified that he observed appellant, Smith, and Dukes leave Smith’s house on
November 16 in the same vehicle.  He testified that the agents followed them to
Allen’s residence in Fort Worth. He then observed appellant and Dukes meet with
Allen in his front yard.  Ranger Stoner further testified that appellant remained
in the presence of Smith and Dukes until they wrecked coming back to Mineral
Wells and that drugs were recovered from appellant’s fellow passenger at the
scene of the wreck.

The
non-accomplice testimony in this case sufficiently connected appellant to the
commission of the charged crime as well as the alleged overt act of him
traveling to Fort Worth with Smith on or about November 16 to take delivery of
cocaine for the purpose of further distribution.  The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that
rational jurors could have found that it sufficiently tended to connect the
accused to the offense.  Smith v. State, 332 S.W.3d 425, 442 (Tex. Crim.
App. 2011); Simmons v. State, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). 
We defer to the factfinder’s resolution of the evidence in making this
determination.  Smith, 332 S.W.3d at 442; Simmons, 282 S.W.3d at
508.  Ranger Stoner’s testimony tended to connect appellant to the overt act
because it placed appellant with Smith at both Smith’s residence and Allen’s
residence under suspicious circumstances.  Accordingly, there was sufficient
evidence corroborating the accomplice testimony pertaining to appellant’s
guilt.  Appellant’s second issue is overruled.

Out-of-Court
Statement

In
his third issue, appellant challenges the trial court’s ruling permitting the
State to offer his out-of-court statement into evidence.  At the pretrial
hearing to consider the admission of appellant’s statement, Officer Scott Mitcham
testified that another officer advised him on November 11, 2009, that appellant
wanted to speak with him.  Appellant was in custody at the time for being in
possession of drug paraphernalia.  Officer Mitcham testified that appellant
told him that he had information that would lead to the arrest of Smith.  Appellant
additionally told Officer Mitcham that he usually went with Smith to Fort Worth
to obtain crack cocaine, that sometimes Dukes went with them, and that they
always traveled through Millsap in making these trips.  Officer Mitcham
testified that appellant voluntarily made these assertions and that they were
not the product of any questioning.  Afterwards, appellant was issued a ticket
and permitted to leave.  On cross-examination, Officer Mitcham testified that
appellant had not been given Miranda[3]
warnings prior to his statement.  The trial court denied the motion to suppress
by permitting Officer Mitcham to testify to a redacted version of appellant’s
statement.[4]

We review a trial court’s ruling on a motion to suppress for an abuse of discretion.  Lujan v.
State, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  In reviewing a ruling on a motion
to suppress, we apply a bifurcated standard of review.  Hubert v. State,
312 S.W.3d 554, 559 (Tex. Crim. App. 2010); Valtierra v. State, 310
S.W.3d 442, 447 (Tex. Crim. App. 2010).  First, we afford almost total
deference to the trial court’s determination of historical facts.  Valtierra,
310 S.W.3d at 447.  The trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Id.;
Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007).  Second, we
review de novo the trial court’s application of law to facts. Hubert,
312 S.W.3d at 559; Valtierra, 310 S.W.3d at 447.  We will sustain the
trial court’s ruling if it is reasonably supported by the record and is correct
on any theory of law applicable to the case.  Valtierra, 310 S.W.3d at
447–48; State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Appellant
argues on appeal that his statement was inadmissible under Miranda
because he was in custody at the time the statement was made.  We disagree.  The
trial court determined that appellant was in custody at the time appellant made
the statement.  However, the trial court also determined that the statement was
not the product of a custodial interrogation.  We defer to this determination
because it hinges on an evaluation of Officer Mitcham’s credibility.  Voluntary statements that are not the result of custodial interrogations are exempt
from the Miranda requirements.  Rhode Island v. Innis, 446 U.S.
291, 300–01 (1980); see Jones v. State, 795 S.W.2d 171, 174–75 (Tex. Crim.
App. 1990); Rathbun v. State, 96 S.W.3d 563, 565 (Tex. App.—Texarkana
2002, no pet.).  As noted by the Supreme Court in Innis: “It is clear therefore that the special procedural safeguards outlined in Miranda
are required not where a suspect is simply taken into custody, but rather where
a suspect in custody is subjected to interrogation.”  446 U.S. at 300. 
Accordingly, the trial court did not err in denying the motion to suppress
under Miranda.

Appellant
additionally asserts that the trial court should have suppressed his statement
because it was not limited to a particular time frame.  Appellant waived this
complaint by not presenting it to the trial court.  Moreover, we conclude that
the contention lacks merit because appellant made the statement contemporaneously
with his involvement in the criminal combination.  Appellant’s third issue is
overruled.

Written
Findings Under Article 38.22

Appellant
asserts in his fourth issue that the trial court erred in failing to enter
written findings of fact and conclusions of law under Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005),
regarding the voluntariness of his statement.  In denying appellant’s motion to
suppress, the trial court made the following findings on the record:

In this case, I will
find that he was in custody.  Absolutely.  That’s irrefutable.  But there is
zero evidence as to any interrogation, period, not pursuant to a question asked
by you or the State or given by the witness.

 

And
without interrogation, then the parameters of 38.22 and Miranda don’t
apply, and there’s not one shred of evidence of trickery, even though you chose
that word.  There’s not one evidence [sic] of coerciveness, even though you
chose that word.

 

Thus, the trial
court made oral findings and conclusions on the record.  Although Article 38.22, section 6 requires the trial court to enter written findings of fact and
conclusions of law, the trial court satisfies that requirement if it “dictates
its findings and conclusions to the court reporter, and they are transcribed
and made a part of the statement of facts, filed with the district clerk and
made a part of the appellate record.”  Alford v. State, 358 S.W.3d 647,
651 n.6 (Tex. Crim. App. 2012) (quoting Murphy v. State, 112 S.W.3d 592,
601 (Tex. Crim. App. 2003)).  As was the situation in Alford, the findings contained in the record in this appeal are sufficient to enable the
parties to fully address, and the appellate courts to review, the trial court’s
ruling.  Accordingly, they satisfy Article 38.22, section 6.  Appellant’s
fourth issue is overruled.

This
Court’s Ruling

             The
judgment of the trial court is affirmed.

            

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

August 9, 2012

Do not publish.  See Tex. R. App. P.  47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]Allen’s appeal is docketed as Cause No. 11-10-00354-CR,
and Smith’s appeal is docketed as Cause No. 11-10-00355-CR.

 





[2]Article 36.09 also provides that a severance is
mandatory when one defendant has an admissible prior conviction and the person
seeking the severance does not.  This portion of the statute is not at issue in
this appeal.





[3]Miranda v. Arizona, 384 U.S. 436 (1966).

 





[4]Prior to issuing a ruling on the motions to prohibit
the use of appellant’s statement, the trial court expressed concern that the
use of the statement against Smith might constitute a violation of the
Confrontation Clause under Crawford
v. Washington, 541 U.S. 36, 59 (2004), because appellant would be unavailable to testify if
he invoked his right not to testify at trial.  The trial court later ruled that appellant’s statement would be
admissible at trial.  The trial court additionally ruled that any reference to
Smith or other defendants be redacted from the statement offered at trial to
eliminate any Confrontation Clause issues.  Pursuant to the trial court’s
ruling, Officer Mitcham testified as follows regarding appellant’s statement:
“Q. What did [appellant] tell you? A. He told me that on occasion, him and
others went to Fort Worth to pick up crack cocaine.”