

# IN THE
# TENTH COURT OF APPEALS

————————

### No. 10-11-00213-CR

**FERNANDO JUAREZ,**

                                                      **Appellant**

 v.

**THE STATE OF TEXAS,**

                                                      **Appellee**

————————

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 34946-CR

————————

## MEMORANDUM OPINION

————————

Fernando Juarez was convicted of the offense of capital murder and sentenced to life in prison without the possibility of parole. TEX. PEN. CODE ANN. § 19.03(a)(2) (West 2011). Juarez complains that the evidence was insufficient for the jury to have found him guilty of either capital murder or the lesser–included offense of murder, the accomplice witness testimony was not sufficiently corroborated, that the trial court

erred by denying his motion to sever his trial from his co-defendants,[1] that the punishment assessed was unconstitutional because he was under the age of 18 at the time of the offense, and that the trial court repeatedly abused its discretion in the admission of evidence and those errors constituted cumulative error and a violation of his due process rights. Because we find no reversible error, we affirm the judgment of the trial court.

*Sufficiency of the Evidence*

In his first issue, Juarez complains that the evidence was insufficient for the jury to have found him guilty of the offense of capital murder either as the person who killed the victim or as a party while in the course of committing an aggravated robbery and that the testimony of an accomplice-at-law was not sufficiently corroborated. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point

---

[1] Juarez was tried with two co-defendants whose appeals are also pending before this Court: Eric Maldonado, No. 10-11-00299-CR, and Ruben Hernandez, No. 10-11-00240-CR.

directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Factual Background*

Ruben Hernandez was an employee at an Exxon in Ennis, Texas, which was operated by Mohammed Hashemi, the victim. Hernandez was working with Hashemi on the evening of the murder. The evening of the offense Hernandez sent text messages to Juarez which told Juarez when Hashemi was leaving to take a deposit to the bank and how much money was in the deposit. Juarez, Eric Maldonado, and Isaiah

Gonzalez[2] were in a vehicle awaiting Hashemi's departure. Juarez, Maldonado, and Gonzalez had decided not to rob Hashemi at the Exxon because it was too crowded. Instead they decided to ambush Hashemi on his way to the bank. Juarez was driving the vehicle. It appeared to Gonzalez that Juarez and Maldonado were familiar with Hashemi's route and knew the bank where he was going to make the deposit because they had been planning the robbery for a while. Maldonado was armed with a .380 caliber pistol and Gonzalez was armed with a Cobray Model M-11 9 millimeter firearm ("Mac-11"). Maldonado had purchased the .380 caliber pistol sixteen days prior to the offense.

Juarez pulled the vehicle in front of Hashemi to stop him and Maldonado and Gonzalez got out and approached Hashemi's minivan. Gonzalez stated that before they got out of the vehicle Maldonado had told him to empty his clip if anyone saw them. Gonzalez pointed the Mac-11 at Hashemi. Hashemi was attempting to unbuckle his seat belt when Maldonado suddenly shot him with the .380 caliber pistol. Ballistics testing confirmed that Hashemi was killed by the .380 caliber pistol purchased by Maldonado. Gonzalez stated that he was in shock and did not unlock the passenger door of the van for Maldonado so Maldonado ran back to the vehicle driven by Juarez. Juarez drove off. Gonzalez got in the minivan with Hashemi still in the driver's seat and followed Juarez. Shortly thereafter, Maldonado got out of Juarez's vehicle and sat

---

[2] Isaiah Gonzalez was not tried with the other co-defendants because he made an agreement with the State for a reduced sentence in exchange for his testimony against Juarez, Maldonado, and Hernandez.

in the passenger seat of the minivan. At some point the minivan passed Juarez and turned off onto a dirt road, where it got stuck. Juarez, Maldonado, and Gonzalez were approached by the landowner who told them to leave.

After getting the minivan unstuck, Maldonado drove the minivan to Ennis Paint where he had just recently stopped working. Juarez followed in the second vehicle. Maldonado and Gonzalez dragged Hashemi's body into the woods and left it near Ennis Paint. The minivan was abandoned at a different location and burned by Maldonado after he removed two envelopes with money. Gonzalez found and took a third envelope of money from the minivan. The masks, rubber gloves, and the t-shirt Maldonado was wearing were thrown out of the window of the car on the same road where the minivan was abandoned. Various DNA testing on the masks, gloves, clothes, and shoes allegedly worn by Maldonado and Gonzalez showed blood that was linked to Hashemi. Additionally, Maldonado and Gonzalez could not be excluded from other DNA recovered off of those items. Juarez's DNA was not found on any articles.

Maldonado gave Juarez and Gonzalez some of the money. Sometime after the offense, Gonzalez learned Hernandez's identity. Hernandez wanted half of the proceeds from the robbery, although Maldonado stated that he did not intend to give Hernandez any money. Juarez, Maldonado, and Gonzalez then used cocaine purchased by Maldonado after the offense. Maldonado and Juarez went to a casino in Oklahoma shortly thereafter.

The day after Hashemi's death Juarez, Maldonado, Gonzalez, and Maldonado's uncle, Michael Salazar, went to purchase a new cell phone for Juarez because he had intentionally broken his after the robbery and murder. They then went to Irving to use cocaine and marijuana at Salazar's apartment, although Juarez did not use drugs at that time, and to get tattoos. Salazar's neighbor, Ariel Armas, testified that Juarez and Maldonado told Salazar and him that Maldonado had shot Hashemi. Juarez said that it was a robbery gone bad and that he did not intend for anyone to be shot, although Armas believed that Juarez and Maldonado both were bragging about it. Gonzalez was bragging about the incident as well. Juarez and Maldonado indicated that the robbery was planned by an unnamed fourth person who worked at the Exxon. Maldonado had approximately $4,000 and Gonzales had approximately $1,000. Before they left they taped some of the stolen money in an envelope. Juarez, Maldonado, and Gonzalez borrowed a vehicle from Salazar to return to Ennis in which they were apprehended. The taped envelope containing the money and cocaine were found in the trunk of that car.

In the early morning hours of the day after Hashemi's death, all of the employees of the Exxon operated by Hashemi were called in for questioning because Hashemi was missing. An employee had to leave and go get Hernandez because he did not have a ride. After reviewing the security camera footage it was shown that Hernandez had been surreptitiously texting on his cell phone the night before. After being questioned,

Hernandez admitted his involvement in the robbery and that "they had been trying to get me to set up a robbery for three weeks." His second written statement claimed that he had done it because he and his loved ones had been threatened. Hernandez led law enforcement to Juarez and Maldonado's homes.

A search of Juarez's bedroom in his parents' home led to the discovery of two boxes of nine millimeter ammunition and two magazines that appeared to fit a Mac-11. A search of Maldonado's mother's home resulted in the discovery of the .380 caliber pistol later determined to be the weapon used to kill Hashemi, a Mac-11, and a shotgun.

Maldonado gave a statement after his arrest where he admitted only to burning the minivan but claimed that an individual named Francisco Soto had committed the robbery and murder. Maldonado led police to Hashemi's body. The phone number Maldonado gave for Soto was the same as Hernandez's but the last four digits were in a different order. No one fitting the name and description provided by Maldonado was ever located.

Cell phone records from Juarez, Maldonado, and Hernandez showed that there were text messages and phone calls during the time leading up to the robbery/murder primarily between Hernandez and Juarez. Text messages which were retrieved showed that Juarez asked Hernandez if Hashemi was there and how much money there was. Hernandez replied that there was "9." Hernandez also sent Juarez a text message to inform him that Hashemi had left.

Gonzalez, a juvenile at the time of the offense, was given a plea bargain of 45 years in prison in exchange for his truthful testimony at trial. Juarez had given a statement to the investigator for the district attorney as well, but no agreement was reached on a plea bargain. In his statement, Juarez admitted to being involved in the planning, sending the messages to Hernandez, being present at the robbery, and described the events of the shooting which were similar to Gonzalez's with the exception that Maldonado was not identified by name.

*Analysis of Sufficiency of the Evidence*

A person commits capital murder if he intentionally causes the death of an individual while in the course of committing or attempting to commit robbery. TEX. PEN. CODE ANN. § 19.03(a)(2) (West 2011); *Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992), *cert denied*, 510 U.S. 852, 114 S. Ct. 154, 126 L. Ed. 2d 115 (1993); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd). The law of parties applies to the offense of capital murder. *Johnson*, 853 S.W.2d at 534; *Frank*, 183 S.W.3d at 72.

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PEN. CODE ANN. § 7.01(a); *Frank*, 183 S.W.3d at 72. A person is "criminally responsible" for an offense committed by the conduct of another, if acting with intent to promote or assist the commission of the

offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PEN. CODE ANN. § 7.02(a)(2); *Frank*, 183 S.W.3d at 72. Evidence is sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App.) (op. on reh'g), *cert. denied*, 519 U.S. 1030, 117 S. Ct. 587, 136 L. Ed. 2d 516 (1996); *Frank*, 183 S.W.3d at 72-73. In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom*, 920 S.W.2d at 302; *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101, 106 S. Ct. 1942, 90 L. Ed. 2d 352 (1986); *Frank*, 183 S.W.3d at 73.

Further, section 7.02(b) of the penal code provides that

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PEN. CODE ANN. § 7.02(b).

The jury was instructed that it could find Juarez guilty of capital murder in any of three different ways: (1) as a principal; (2) as a party under section 7.02(a)(2) of the Texas Penal Code; and (3) as a co-conspirator under section 7.02(b) of the Texas Penal

Code.  The jury returned a general verdict; therefore, if the evidence is sufficient to support a guilty finding under any of the allegations submitted, we must uphold the jury's guilty verdict.  *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

Juarez does not challenge the evidence regarding the robbery as either a co-conspirator or a party.  Rather he complains that there was no evidence that Juarez could be liable for Maldonado committing the murder by shooting Hashemi either as a co-conspirator or a party because he could not have known that Maldonado intended to kill Hashemi.

Intent is most often proven through the circumstantial evidence surrounding the crime.  *See Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).  Intent to kill may be inferred from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon.  *See Ross v. State*, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992).  If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill.  *See Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986).  Maldonado and Gonzalez were both armed with loaded weapons as they exited the vehicle Juarez was driving and approached Hashemi.  Maldonado had told Gonzalez to shoot if necessary.  Maldonado shot Hashemi from a close distance even though Hashemi was cooperating.  The evidence was sufficient for the jury to have determined that Maldonado intended to kill Hashemi.

Regarding Juarez and whether the murder could have been anticipated by him, we note that the extra magazines and ammunition that were the same type as the Mac-11 that Gonzalez pointed at Hashemi was later found in Juarez's closet. After the shooting, Juarez stayed with Maldonado and Gonzalez and drove with them as they dumped Hashemi's body in the woods, destroyed the van, and disposed of other physical evidence. According to Armas, Juarez and Maldonado bragged about committing the murder the next day. It was not unreasonable for the jury to infer that Juarez knew that Maldonado and Gonzalez were armed when they approached the van. It was also not unreasonable for the jury to have determined that murder should have been anticipated. Using the appropriate standards, the evidence was sufficient for the jury to have determined that Juarez was guilty of capital murder as a party.

*Analysis of Accomplice Witness Corroboration*

Juarez further complains that the testimony of Gonzalez was insufficiently corroborated pursuant to the accomplice witness rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). A conviction cannot be secured upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant to the offense. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). Article 38.14 of the Texas Code of Criminal Procedure provides: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is

not sufficient if it merely shows the commission of the offense." *Delacruz v. State*, 278 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (*quoting* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005)). The Court of Criminal Appeals, in interpreting article 38.14, has held it is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; the corroborating evidence need only tend to connect the defendant to the offense. *Id*. (*citing Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999); *McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App. 1997)). When determining whether non-accomplice evidence tends to connect a defendant to the offense, the Court of Criminal Appeals has stated that the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that the evidence sufficiently tended to connect the defendant to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). When analyzing a challenge to the sufficiency of corroborative evidence, we view the evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). Thus, when there are conflicting views of the evidence, one tending to connect the defendant to the offense and one that does not, this Court will defer to the factfinder's resolution of the evidence. *Id*. For that reason, "it is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

The test for sufficient corroboration of accomplice testimony is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense. *Delacruz*, 278 S.W.3d at 487. We cannot examine the corroborating evidence piecemeal; instead we must consider the combined force of all of the non-accomplice evidence that tends to connect the defendant to the offense. *Smith*, 332 S.W.3d at 442. When examined in that light, the cumulative effect of suspicious circumstances may be enough to tend to connect the defendant to the charged offense even if they are insufficient to do so when examined individually. *Yost v. State*, 222 S.W.3d 865, 872 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Viewed collectively, even otherwise insignificant incriminating circumstances may tend to connect a defendant to a crime he is accused of committing. *Id*. Thus, proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Smith*, 332 S.W.3d at 443.

After eliminating all of Gonzalez's accomplice witness testimony, we conclude that the non-accomplice evidence is sufficient to tend to connect Juarez to the capital murder. This non-accomplice evidence includes, but is not limited to, Juarez's own statements, the discovery of the ammunition and magazines in his bedroom, the testimony of Armas about statements made by Juarez after the murder which did not

include a denial by Juarez of participating in the murder, his role of driving the vehicle and remaining after Hashemi was shot, Juarez's role in texting with Hernandez prior to the robbery, and his involvement in the planning of the robbery. The evidence was sufficient to corroborate the accomplice testimony.

We overrule issue one.

*Sufficiency of the Evidence—Lesser Included Offenses*

In his second issue Juarez complains that the evidence was insufficient to establish that he was guilty of the offense of murder; however, this issue is contingent upon this Court sustaining his first issue, therefore it is not necessary to address it.

*Motion to Sever*

Juarez complains that the trial court abused its discretion by denying the motion to sever he made during the trial. The motion was made because Juarez contended that Hernandez's pursuit of a duress defense at trial coupled with potential allegations of gang activity created a substantial risk that he would not be tried solely on the offense alleged. Juarez additionally complains that he was not made aware timely of the agreement between the State and Gonzalez.

The State filed a motion to join the defendants' cases for trial which the trial court granted on April 15, 2011. At the hearing, only counsel for Hernandez objected to the joinder. Juarez and Maldonado stated that they did not oppose the motion. On May 2, 2011, at a pretrial hearing there was discussion regarding Hernandez's defense that he

had been forced to be involved by "the gang." No request for severance was made by any party at that time. On either May 2 or May 7, 2011,[3] the State gave notice to the defendants of the agreement between the State and Gonzalez which included allegations of other offenses committed by Juarez and gang activities. The jury was selected on May 12, 2011 and testimony began on May 16, 2011. After three witnesses testified, Hernandez argued that the door had been opened regarding gang activity, and Juarez mentioned a severance for the first time.

The next day there was discussion outside of the presence of the jury regarding the agreement with Gonzalez which included allegations of gang activity and other offenses involving Gonzalez, Juarez, and Maldonado. At that time, Juarez made an oral motion to sever. Later that day, on May 17, 2011, Juarez filed a written motion to sever which includes a statement that Juarez learned of the duress defense and gang involvement "on or about May 2 or May 7, 2011." That written motion also complained of prior offenses committed by Juarez, Gonzalez, and Maldonado. The State argued that the motion was not filed timely. The trial court denied the motion to sever.

We agree with the State that Juarez's oral motion and written motion to sever were untimely; by his own admission Juarez was aware prior to trial that Gonzalez had an agreement with the State and his testimony would likely include allegations of gang

---

[3] The record is conflicting as to which date is correct.

activity and other offenses. Juarez was also aware that Hernandez was pursuing a duress defense and that gang involvement was an issue in Hernandez's defense.

To be timely, a motion for severance must be made before trial if the factual basis for seeking a severance was known prior to trial. *Qualley v. State*, 206 S.W.3d 624, 631 (Tex. Crim. App. 2006). Otherwise, the motion must be made "at the first opportunity or as soon as the grounds for [severance] become apparent or should have become apparent." *Id.* We find that Juarez's motion to sever was not made timely and therefore, the trial court did not err by denying the motion. We overrule issue three.

*Unconstitutional Sentence*

Juarez complains that the sentence of life in prison without the possibility of parole is unconstitutional as applied to him. Relying on the Supreme Court's decision in *Miller v. Alabama*, _____ U.S. _____, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), Juarez argues the trial court erred in sentencing him to life without parole because he was seventeen at the time of the offense. Juarez contends his sentence violates the mandate against cruel and unusual punishment contained in the Eighth Amendment because his age at the time of the offense bars the punishment imposed. *See Miller*, 132 S. Ct. at 2469; *see* U.S. CONST. amend. VIII (providing that "[e]xcessive bail shall not be required, nor excessive fines, nor cruel and unusual punishment inflicted."). In *Miller*, the Supreme Court held that a mandatory sentence of life imprisonment without parole for defendants who are under the age of 18 at the time the offense is committed violates

the Eighth Amendment's prohibition on cruel and unusual punishment. *See Miller*, 132 S. Ct. at 2469.

The State argues that Juarez did not properly preserve this issue before the trial court. The rules of appellate procedure require that in order to preserve error for appellate review, the complaining party must make a specific objection or complaint, and obtain a ruling thereon before the trial court. TEX. R. APP. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (holding that "[i]n order for issue to be preserved on appeal, there must be a timely objection which specifically states the legal basis for the objection."). This requirement ensures that trial courts are provided an opportunity to correct any error "at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 216 (Tex. Crim. App. 2002).

The Texas Court of Criminal Appeals has long held that even constitutional rights, including the right to be free from cruel and unusual punishment, can be forfeited by a failure to raise a complaint on specific constitutional grounds in the trial court. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that complaint relating to constitutional prohibition against cruel and unusual punishment was waived when no objection on this basis was made in trial court); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding cruel and unusual punishment claim not preserved as defendant urged no objection in trial court). This Court has followed

that precedent.  *See Winkfield v. State*, No. 10-10-00394-CR, 2011 Tex. App. LEXIS 7814, at *2 (Tex. App.—Waco Sept. 28, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to preserve his Eighth Amendment complaint because he never made the argument to the trial court).

Here, Juarez did not object to the sentence imposed during trial and did not file a motion for new trial on the basis that his sentence violated the Eighth Amendment or constituted cruel and unusual punishment.  Accordingly, we hold Juarez has failed to preserve the issue for our review.  *See Rhoades*, 934 S.W.2d at 120; *Curry*, 910 S.W.2d 497; *see also Garza v. State*, No. 04-11-00891-CR, 2012 Tex. App. LEXIS 8818, at *4 (Tex. App.—San Antonio Oct. 24, 2012, pet. granted) (mem. op., not designated for publication) (holding that defendant waived Eighth Amendment challenge to life without parole sentence for murder committed when defendant was juvenile because he failed to raise issue in trial court); *Rivera v. State*, 381 S.W.3d 710, 713-14 (Tex. App.—Beaumont 2012, pet. dism'd) (same); *Almanzar v. State*, No. 01-11-01058-CR, 2012 Tex. App. LEXIS 10524, at *36 (Tex. App.—Houston [1st] Dec. 20, 2012, pet. dism'd) (same).  We overrule issue four.

*Admission of Evidence*

In his fifth issue Juarez complains that the trial court erred "repeatedly by admitting unauthenticated documents, reports, prejudicial evidence, and physical evidence over the objections of Appellant..."  The State argues that this issue is

multifarious and inadequately briefed because each item complained of is not specifically identified and does not provide adequate references to the record to support his claims. Juarez has not refuted this argument.

An issue is multifarious when it raises more than one specific complaint, and we are permitted to reject multifarious issues on that basis alone. *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000). We agree with the State that Juarez's fifth issue is multifarious and improperly briefed. Accordingly, Juarez's fifth issue is overruled.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 25, 2013
Do Not Publish
[CRPM]